**UNITED STATES of America,**
**Plaintiff,**

v.

**Roya RAHMANI, et al., Defendants,**

**No. CR01–209–RMT.**

United States District Court,
C.D. California.

June 21, 2002.

---

Nadine Hettle, Federal Public Defenders Office, Los Angeles, CA, for Hossein Afshari.

Michael J. Treman, Michael J. Treman Law Offices, Santa Barbara, CA, for Mohammad Omidvar.

Yolanda Barrera, Yolanda Barrera Law Offices, Arcadia, CA, Sherri L. Garthwaite, Redondo Beach, CA, for Hassan Rezaie.

Malcolm M. Guleserian, Seth J. Kelsey Law Offices, Westminster, CA, Sam S. Puathasnanon, Manatt, Phelps & Phillips, Los Angeles, CA, Abbe D. Lowell, Manatt, Phelps & Phillips, Washington, DC, Anthony Pacheco, Jack P. DiCanio, Proskauer Rose, Los Angeles, CA, for Roya Rahmani.

David R. Reed, David R. Reed Law Offices, Los Angeles, CA, for David Taj.

Terry J. Amdur, Terry Amdur Law Office, Pasadena, CA, Richard M. Steingard, Richard M. Steingard Law Offices, for Mustafa Ahmady.

David R. Evans, David R. Evans Law Office, Pasadena, CA, Manuel U. Araujo, Office of the Federal Public Defender, Riverside, CA, for Alireza Mohamad Moradi.

David R. Fields, AUSA–Office of U.S. Attorney, Criminal Division, Los Angeles, CA, for United States.

## MEMORANDUM ORDER GRANTING DEFENDANTS' MOTION TO DISMISS INDICTMENT BASED ON RECENT D.C. CIRCUIT CASE

TAKASUGI, District Judge.

This matter came before the court for hearing on March 11, 2002 on Defendant Roya Rahmani's motion to dismiss the indictment based on a recent D.C. Circuit opinion, in which Defendants Mustafa Ahmady, Navid Taj, Mohammad Omidvar, Alireza Mohammadmoradi, Hassan Rezaie, and Hossein Afshari have filed joinders. Defendants' motion requires me to provide a resolution to the following somewhat provocative question:

If the procedure whereby an organization is designated by the Secretary of State as "terrorist" violates the Due Process Clause of the United States Constitution, may such designation nevertheless be utilized as a predicate in a criminal prosecution against individuals for providing material support to that designated terrorist organization?

### Facts:

The indictment in the instant action charges defendants ROYA RAHMANI, MUSTAFA AHMADY, HOSSEIN AFSHARI, ALIREZA MOHAMMADMORADI, MOHAMMAD OMIDVAR, NAVID TAJ and HASSAN REZAIE (hereafter "defendants") with conspiracy and 58 substantive counts of providing material support to the Mujahedin-e Khalq ("MEK"), a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1)[1] (hereafter "Section 2339(B)"). The indictment describes solicitations, wire transfers and monetary donations by the defendants that took place from October 8, 1997 through February 27, 2001, all for the benefit of the MEK.

### The relevant statute:

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214–1319 (1996) to address concerns regarding international terrorism. Title III of the AEDPA, 110 Stat. 1247, entitled "International Terrorism Prohibition," was designed to cut off monetary and other support for such terrorist activities. In relevant part, AEDPA prohibits persons from knowingly providing "material support or resources" to "foreign terrorist organizations." 18 U.S.C. § 2339B(a)(1).

Specifically, the AEDPA authorizes the Secretary of State, in consultation with the Attorney General and the Secretary of the Treasury, to designate an organization as a "foreign terrorist organization" pursuant to 8 U.S.C. § 1189 (hereafter "Section 1189") if the Secretary finds that the organization is a foreign organization that engages in terrorist activity (as defined in section 1182(a)(3)(B) of Title 8) and the terrorist activity of the organization

---

1. 18 U.S.C. § 2339B provides, in relevant part, that:

   Whoever, within the United States or subject to the jurisdiction of the United States, knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

   18 U.S.C. § 2339B

threatens the security of United States nationals or the national security of the United States. Classified information may be considered in designating an organization and the Secretary is required to create an administrative record in support of the designation. 8 U.S.C. § 1189(a).

In making a designation, the Secretary, by classified communication, must notify several high ranking members of Congress of the intent to designate a foreign organization, together with the findings and factual basis in support of the foreign terrorist designation. Seven days after notification to such high ranking members of Congress, the designation is published in the Federal Register. *The organization to be designated is not informed of the designation prior to publication.* The designation persists for a period of two years and is renewable by the Secretary. Congress may block or subsequently revoke a designation by an Act of Congress. The Secretary may also revoke a designation based on changed circumstances. However, the revocation of a designation does not affect any action or proceeding based on conduct committed prior to the effective date of such revocation. 8 U.S.C. § 1189(a).

For purposes of a prosecution under Section 2339(B), the designation takes effect immediately upon publication in the Federal Register. Once effective, a defendant in a criminal action is precluded from raising any question concerning the validity of the designation as a defense or an objection at any trial or hearing. Furthermore, any assets of the designated organization held in United States financial institutions may be frozen. 8 U.S.C. § 1189(a).

Within 30 days following publication of the designation in the Federal Register, an organization designated as a foreign terrorist organization may seek judicial review of the designation in the United States Court of Appeals for the District of Columbia Circuit (hereafter "D.C. Circuit"). The court's review is based solely upon the administrative record, except that the government may submit, for *ex parte* and *in camera* review, classified information used in making the designation. 8 U.S.C. § 1189(b).

The D.C. Circuit court must hold unlawful and set aside a designation that it finds to be:(i) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (ii) *contrary to constitutional right,* power, privilege, or immunity; (iii) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; (iv) lacking substantial support in the administrative record taken as a whole or in classified information submitted to the court, or (v) not in accord with the procedures required by law. Finally, the pendency of an action for judicial review does not alter or diminish the effectiveness of the designation, unless the court issues a final order setting aside the designation. 8 U.S.C. § 1189(b).

***The relevant case law:***

In June of 2001, the D.C. Circuit issued its opinion in *Nat'l Council of Resistance of Iran (NCRI) v. Dept. of State,* 251 F.3d 192 (D.C.Cir.2001) (hereafter *"NCRI").* The court stated that a unique feature of the foreign terrorist organization designation procedure is:

> the dearth of procedural participation and protection afforded the designated entity. At no point in the proceedings establishing the administrative record is the alleged terrorist organization afforded notice of the materials used against it, or a right to comment on such materials or the developing administrative record. Nothing in the statute forbids the use of "third hand accounts, press stories, material on the Internet or other hearsay regarding the organization's activities ...." [citation omitted]. The Secretary may base the findings on clas-

sified material, to which the organization has no access at any point during or after the proceeding to designate it as terrorist.

\* \* \* \* \* \*

[U]nder the AEDPA the aggrieved party has had no opportunity to either add to or comment on the contents of that administrative record; and the record can, and in our experience generally does, encompass "classified information used in making the designation," as to which the alleged terrorist organization never has any access, and which the statute expressly provides the government may submit to the court *ex parte* and *in camera.*

*NCRI,* 251 F.3d at 196–97.

The *NCRI* court found that a foreign terrorist organization designation worked a deprivation of property on the designat-

ed organization, the National Council of Resistance of Iran,[2] because there was a colorable claim that the organization had an interest in a bank account, which interest would be frozen under Section 1189. *Id.* at 204. Therefore, the court held that the Secretary of State must afford the limited due process available to a putative foreign terrorist organization prior to the deprivation resulting from designating that entity as such in the Federal Register. To provide due process in designating an entity as a "foreign terrorist organization," the Secretary of State must afford the entity prior notice of the designation. However, upon an adequate showing to the court, the Secretary may provide post-designation notice where earlier notification would impinge upon the security and other foreign policy goals of the United States. *Id.* at 208. Such a showing was not made by the Secretary in the *NCRI* case.[3]

2. The NCRI is an alias for the People's Mujahedin Organization of Iran, PMOI, Mujahedin-e Khalq Organization, MEK, MKO, Mujahedin-e Khalq, National Council of Resistance, and NCR. 64 FR 55112, 55012. Any reference in this opinion to any one of NCRI's aliases should be understood to refer to all of the aliases listed in this footnote.

3. The *NCRI* court stated:
It is simply not the case, however, that the Secretary has shown how affording the organizations whatever due process they are due before their designation as foreign terrorist organizations and the resulting deprivation of right would interfere with the Secretary's duty to carry out foreign policy.
To oversimplify, assume the Secretary gives notice to one of the entities that:
We are considering designating you as a foreign terrorist organization, and in addition to classified information, we will be using the following summarized administrative record. You have the right to come forward with any other evidence you may have that you are not a foreign terrorist organization.
It is not immediately apparent how the foreign policy goals of the government in general and the Secretary in particular would be inherently impaired by that no-

tice. It is particularly difficult to discern how such a notice could interfere with the Secretary's legitimate goals were it presented to an entity such as the PMOI [an alias for the MEK and NCRI] concerning its redesignation. We recognize, as we have recognized before, that items of classified information which do not appear dangerous or perhaps even important to judges might "make all too much sense to a foreign counterintelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods." [Citation omitted] We extend that recognition to the possibility that alerting a previously undesignated organization to the impending designation as a foreign terrorist organization might work harm to this county's [sic] foreign policy goals in ways that the court would not immediately perceive. We therefore wish to make plain that we do not foreclose the possibility of the Secretary, in an appropriate case, demonstrating the necessity of withholding all notice and all opportunity to present evidence until the designation is already made. *The difficulty with that in the present case is that the Secretary has made no attempt at such a showing.*
*NCRI,* 251 F.3d at 207–08 [emphasis added].

The *NCRI* court further counseled that as soon as the Secretary of State determines that it will designate an entity as a "foreign terrorist organization", the Secretary must, in order to comply with due process guarantees, provide notice of those unclassified items upon which he proposes to rely to the entity to be designated. There must also be compliance with the hearing requirement of due process jurisprudence, that is, the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* at 209. The Secretary of State need not provide a hearing closely approximating a judicial trial to comply with due process guarantees when designating an entity as a "foreign terrorist organization." Nevertheless, the Secretary must afford an entity considered for imminent designation the opportunity to present, at least in written form, such evidence as it might be able to produce to rebut the administrative record or otherwise negate the proposition that it is a foreign terrorist organization. *Id.*

The *NCRI* court found that the NCRI was designated as a foreign terrorist organization in compliance with the designation statute but in violation of due process. *Id.* at 196.[4] The *NCRI* court, though acknowledging that the Secretary made no showing of national security concerns, nevertheless, did not set aside the existing designation, relying upon unstated national security concerns for its position! Instead, the court remanded the issue to the Secretary with instructions that the entity be afforded the opportunity to file responses to the non-classified evidence against it, introduce evidence to support its allegations

that it is not a terrorist organization, and be given an opportunity to be meaningfully heard by the Secretary upon the relevant findings. *NCRI,* 251 F.3d at 208–09. The Secretary of State, after complying with the procedural actions called for by the *NCRI* court, reaffirmed the foreign terrorist organization designation ascribed to NCRI and its alias MEK. The MEK has filed a petition with the D.C. Circuit to review the Secretary's reaffirmation decision, which review is currently pending.

*Analysis:*

Defendants launch a multi-pronged attack to dismiss the indictment in this case. Defendants contend that the 1999 designation of the MEK may not be used as a predicate in the instant criminal prosecution because the designation statute, both facially and under *U.S. v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), violates due process. Additionally, defendants contend that the indictment charges them with raising money for the Committee for Human Rights ("CHR"), an entity which has not been designated as a foreign terrorist organization. Finally, defendants aver that the uncertainty surrounding whether the MEK should be considered a foreign terrorist organization should dissuade this court from using the 1999 designation as a predicate in the instant criminal proceeding. The latter contentions shall be considered first.

*The uncertainty of the foreign terrorist designation raises a political question.*

■ Defendants argue that there is uncertainty regarding the propriety of desig-

---

4. The *NCRI* court explained that

the statutory judicial review is limited to the adequacy of the record before the court to support the Secretary's executive decision. That record is currently compiled by the Secretary without notice or opportunity for any meaningful hearing. We have no reason to presume that the petitioners in

this particular case could have offered evidence which might have either changed the Secretary's mind or affected the adequacy of the record. However, without the due process protections which we have outlined, we cannot presume the contrary either.

*NCRI,* 251 F.3d at 209.

nating the MEK as a foreign terrorist organization.[5] Members of Congress have opined that the MEK is a legitimate resistance movement fighting the tyrannical regime presently in power in Iran.[6] According to these members of Congress, the MEK prevented the Iranian regime from obtaining nuclear weapons; provided information to the U.S. regarding Iran-sponsored bombing attacks on Israeli interests; and supports the Middle East peace process.[7] Finally, members of Congress have stated that the MEK is not engaged in terrorist activities but, rather, in a legitimate struggle for an Iran of democracy, religious tolerance, human rights and non-violence.[8]

Defendants argue that the designation of the MEK may not be relied upon in a criminal prosecution where, as here, the foregoing statements by members of Congress create uncertainty as to the propriety of such designation. Defendants seem to aver that, since a number of members of Congress view the MEK favorably, and since Section 1189 provides for revocation of the terrorist designation by an Act of

Congress, the designation should not be relied upon in the instant prosecution.

Whether the MEK is a foreign terrorist organization presents a political question. "Political questions" are controversies which revolve around policy choices and value determinations constitutionally committed to the Congress or the Executive Branch, and are not subject to judicial review. *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986). In *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court identified six independent factors indicative of a political question:

> (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; (2) a lack of judicially discoverable and manageable standards for resolving it; (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; (5) an unusual need for

---

**5.** At the outset, this court notes that defendants are not attacking the indictment on First Amendment grounds. Although, at first blush, defendants' "uncertainty" argument sounds similar to a constitutional attack on vagueness grounds, such is not the case. Under the vagueness doctrine, a law which does not fairly inform a person of what is commanded or prohibited is unconstitutional as violative of due process. Here, Section 1189 is clear on how an entity is to be designated as a foreign terrorist organization and defendants do not contend otherwise. Instead, defendants contend that the MEK's designation is "uncertain" and should not be relied upon in the instant prosecution because Congress has the ability to revoke the MEK's designation and a large number of Congressmen and Senators have voiced their support for the MEK. As such, the doctrine of vagueness is not implicated in defendants' "uncertainty" argument.

**6.** *See* Exh. C to Puathasnanon Decl. (letter from Senator Torricelli to President Clinton, dated October 22, 1997, criticizing State Department's decision to designate the PMOI, another name for the MEK).

**7.** *See* Exh. F to Puathasnanon Decl. (letter from Representatives Ros–Lehtinen and Ackerman to Secretary of State Colin Powell, dated August 31, 2001, citing reasons for removal of the PMOI's foreign terrorist organization designation).

**8.** *See* Exh. E. to Puathasnanon Decl. (Congress Media Advisory, dated October 11, 2000, and New York Times article, dated November 3, 2000, reporting that 228 members of the House of Representatives signed a "Statement on Iranian Policy" supporting the goals of the National Council of Resistance—another name for the NCRI, PMOI and MEK).

unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217, 82 S.Ct. 691. Implicating any one of these factors renders a question "political" and thus nonjusticiable. *Armstrong v. United States,* 759 F.2d 1378, 1380 (9th Cir.1985).

Here, the executive branch, through the Secretary of State, and some members of the legislative branch differ on whether the MEK is a foreign terrorist organization. Section 1189 provides the statutory mechanisms for Congress or the executive branch to clear the MEK of its terrorist designation, if it so wishes.[9] For this court to weigh in on this debate would create "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Baker v. Carr,* 369 U.S. at 217, 82 S.Ct. 691. Moreover, Congress, and not the courts, has the fact-finding resources to conclude how best to prevent the United States from being used as a base for terrorist fundraising. *Humanitarian Law Project v. Reno,* 205 F.3d 1130, 1136 (9th Cir. 2000).

That being said, once the *decision* to designate is made, this court has the duty to scrutinize the designation *procedure* for conformance with the Constitution. *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803)("if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the Constitution; or conformably to the Constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.")

*The indictment is not defective for alleging that the CHR is a front for the MEK.*

■ The indictment charges that defendants AHMADY, AFSHARI, and MOHAMMADMORADI "would solicit donations to the Committee for Human Rights ('CHR'), a front organization for the MEK ... knowing and intending that these donated funds were going to the MEK." Indictment at 2:18–23. Defendants contend that the CHR has not been designated as a foreign terrorist organization or even an alias of one and, therefore, there can be no criminal liability under Section 2339B for providing material support to the CHR.

In analyzing a pretrial motion to dismiss, this court must presume the truth of the allegations in the charging instruments. *U.S. v. Caicedo,* 47 F.3d 370, 371 (9th Cir.1995). Here, a careful reading of the indictment indicates that the defendants solicited monies which were knowingly and intentionally directed to the MEK. Accordingly, there is no defect in the indictment warranting dismissal where, as here, the indictment charges that the ultimate destination of the solicited funds is a designated foreign terrorist organization.

Defendants next aver that any allegation regarding solicitation by the defendants under the guise of the CHR should be stricken because the government will not use these allegations to support the criminal charge. Reply at 15:16–19. I must reject this request. The government may allege defendants' use of the CHR as a front to solicit funds for the MEK since such activity is part and parcel of the alleged criminal scheme.

■ Finally, defendants argue that the government cannot establish that fundrais-

---

9. Section 1189 contemplates revocation of a designation by an Act of Congress (8 U.S.C. § 1189(4)(B)(5)) or by the Secretary of State based on a change in circumstances (8 U.S.C. § 1189(4)(B)(6)).

ing for the CHR was, in fact, fundraising for the MEK and, therefore, the indictment should be limited to what the government can prove. Reply at 15:9–23. However, a defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence. *U.S. v. Jensen,* 93 F.3d 667, 669 (9th Cir. 1996). Accordingly, the indictment is not defective by virtue of its mention of the CHR.

*The defendants may raise the constitutionality of Section 1189 in this proceeding.*

This court ordered further briefing on the issue of whether the defendants can raise the unconstitutionality of Section 1189 as a defense when the statute did not violate their due process rights. The government avers that if the D.C. Circuit or the Supreme Court struck down Section 1189 as unconstitutional defendants would then be entitled to raise this defense in the instant motion to dismiss. The government is essentially saying that this court is without power to review the constitutionality of Section 1189. "[This] would seem, at first view, an absurdity too gross to be insisted on. It shall, however, receive a more attentive consideration." *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803).

*The D.C. Circuit is not the sole arbiter of Section 1189's constitutionality.*

■ The parties both agree that the D.C. Circuit is the sole venue for judicial review of a designation pursuant to Section 1189. I do not share this view. Although Section 1189 directs judicial review of for-

eign terrorist organization designations to the D.C. Circuit, such review is not *restricted* to that court. Before a statute will be construed to restrict access to judicial review there must be clear and convincing evidence of Congressional intent to impose such a restriction. *Johnson v. Robison,* 415 U.S. 361, 373–74, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

■ Here, Section 1189(b)(1) provides that "an organization designated as a foreign terrorist organization may seek judicial review of the designation in the United States Court of Appeals for the District of Columbia Circuit." This language does not evince a clear and convincing congressional intent to foreclose judicial review of a designation by other federal courts and, therefore, does not make the D.C. Circuit the sole arbiter of Section 1189's constitutionality.

In addition to the plain language of Section 1189, I am duty bound to pass on Section 1189's constitutionality. This court understands its oath to uphold the Constitution and apply only those laws made in conformance to, and pursuance of, the Constitution. I will not abdicate this duty and allow this criminal case to proceed if the evidence indicates that one element of the offense (the foreign terrorist designation) was procured in violation of the Constitution.

Finally, if, as the government contends, defendants are bound by the D.C. Circuit's judicial review of the MEK's designation then justice and fairness require that such judicial review be effective. However, the tribunal entrusted with reviewing the MEK's designation admitted to its inability to conduct an effective judicial review of the designation.[10] Moreover, the tribunal

---

10. *See People's Mojahedin Organization of Iran v. U.S. Department of State,* 182 F.3d 17, 19 (D.C.Cir.1999)("The information recited [in the administrative record] is certainly not evidence of the sort that would normally be received in court. It is instead material the Secretary of State compiled as a record, from

sources named and unnamed, the accuracy of which we have no way of evaluating.") *See also NCRI,* 251 F.3d at 208 ("That [administrative] record is currently compiled by the Secretary without notice or opportunity for any meaningful hearing. We have no reason

entrusted with reviewing the MEK's designation for compliance with the Constitution allowed such designation to persist while, in the same opinion, acknowledging that such designation was obtained in violation of due process. For the foregoing reasons, I believe the D.C. Circuit is not the sole arbiter of Section 1189's constitutionality.

*Defendants may raise the constitutionality of Section 1189 as a defense.*

■ The government next contends that Section 1189 expressly precludes defendants from challenging the MEK's designation as a defense in a trial or hearing.[11] Relying upon Section 1189, the government argues that the *NCRI* court's opinion regarding the unconstitutionality of the designation procedure may not be raised as a basis for dismissal. I respectfully disagree.

As a district judge I am duty bound to scrutinize the laws applied in my court for conformance with the Constitution lest I apply an unconstitutional law. *See Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803); *U.S. v. Raines,* 362 U.S. 17, 20, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ("[t]he very foundation of the power of the federal courts to declare Acts of Congress unconstitutional lies in the power and duty of those courts to decide cases and controversies properly before them. This was made patent in the first case here exercising that power—'the gravest and most delicate duty that this Court is called on to perform.'") *quoting Blodgett v. Holden,* 275 U.S. 142, 148, 48 S.Ct. 105, 72 L.Ed. 206 (1927)(Holmes, J.); and *Du-*

*hart v. Carlson,* 469 F.2d 471, 474 (10th Cir.1972)(same).

The instant Section 2339(B) prosecution relies upon a designation obtained in violation of due process. I will not abdicate my responsibilities as a district judge and turn a blind eye to the constitutional infirmities of Section 1189 when it supplies a necessary predicate to the charged offense. Moreover, my duty to review a statute for constitutionality is of the greatest import where, as here, defendants stand to suffer criminal penalties through the operation of such statute.

Finally, Section 1189(a)(8) is an impermissible limitation on the federal courts' jurisdiction to hear constitutional challenges to the sufficiency of an indictment. Congress may not exercise its power over federal jurisdiction in a manner that would violate the due process clause or other provisions of the Constitution. *See Battaglia v. General Motors,* 169 F.2d 254 (2d Cir.1948). To prevent the legislature from using the federal courts to accomplish unconstitutional ends, the power of Congress to limit the courts' jurisdiction must be tempered by the due process guarantees of the Fifth Amendment. *See id.* at 257.

Section 1189(b)(1) only provides a right to judicial review to designated foreign terrorist organizations. Combined with Section 1189(a)(8), individual defendants facing a Section 2339(B) prosecution never have an opportunity to challenge the underlying designation. Thus, Section 1189 violates the defendants' due process rights because defendants, upon a successful Section 2339(B) prosecution, are deprived of

---

to presume that the petitioners in this particular case could have offered evidence which might have either changed the Secretary's mind or affected the adequacy of the record. However, without the due process protections we have outlined, we cannot presume the contrary either.")

**11.** 8 U.S.C. § 1189(a)(8) provides that "[i]If a designation under this subsection has become effective under paragraph (1)(B), a defendant in a criminal action shall not be permitted to raise any question concerning the validity of the issuance of such designation as a defense or an objection at any trial or hearing."

their liberty based on an unconstitutional designation they could never challenge. Accordingly, I believe defendants may raise the constitutionality of Section 1189 as a defense and I now turn to the merits of such a defense.

*Section 1189 does not violate U.S. v. Mendoza–Lopez.*

■ Defendants' initial submissions in support of its motion to dismiss relied, in large part, on *U.S. v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). In *Mendoza–Lopez*, the Court precluded the government from using a prior deportation against a defendant if it was the result of a due process violation and such violation was prejudicial. *Mendoza–Lopez*, 481 U.S. at 840, 107 S.Ct. 2148. Defendants contend that *Mendoza–Lopez* mandates dismissal of the indictment because, according to *NCRI*, the MEK's designation as a foreign terrorist organization violated due process. Therefore, defendants aver that such designation cannot be used to prove a predicate to the charged offense.

The government responds that the MEK suffered no prejudice as a result of the designation proceeding. Prejudice requires a showing of a reasonable probability that, but for the due process violation, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here, no prejudice could have inured to the NCRI because the same result obtained after the due process defects were purportedly cured. Since no prejudice inured to the NCRI, defendants cannot prove the prejudice necessary for a *Mendoza–Lopez* violation. Accordingly, defendants' *Mendoza–Lopez* argument falls.[12]

*Section 1189 is unconstitutional on its face.*

■ The parties were ordered to submit additional briefing addressing whether Section 1189 is unconstitutional on its face because the express language of Section 1189 denies a designated organization the opportunity to be heard in a meaningful manner. This issue arises because of two specific provisions of Section 1189. Section 1189(a)(3)(A) provides that "[i]n making a designation under this subsection, the Secretary shall create an administrative record." Section 1189(b)(2) provides that "[r]eview under this subsection shall be based solely upon the administrative record, except that the Government may submit, for *ex parte* and *in camera* review, classified information used in making the designation."

Considering these two subsections together, Section 1189 provides for judicial review based *solely* on an administrative record created by the Secretary, without notice to or participation by the organization to be designated. Moreover, apart from the administrative record, the only other matter that may be considered for judicial review is classified information provided *by the government* in support of the designation. Thus, Section 1189, by its express terms, provides the designated organization with no notice and no opportunity to object to the administrative record or supplement it with information to contradict the designation.

A facial challenge to the constitutionality of a statute is the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exists under which the statute would be valid. *Myers v. San Francisco*, 253 F.3d 461, 467 (9th Cir.2001). Thus, a statute is facially constitutional if there is at least

---

**12.** A further elaboration of the "as applied"    analysis is discussed in fn. 14, *infra*.

**1056**

one set of circumstances under which it could be valid. *Id.* at 469, n. 1. The government contends that Section 1189 is capable of at least two constitutional applications and, therefore, survives any facial attack.

The government first proffers the case of *People's Mojahedin Organization of Iran ["PMOI"] v. U.S. Dept. of State,* 182 F.3d 17 (D.C.Cir.1999) as evidence of one constitutional application of Section 1189. However, the *PMOI* court did not address whether the entity in that case was designated in compliance with constitutional principles. In fact, the *PMOI* court explicitly found that the entity had neither presence nor property in the U.S. and, therefore, did not enjoy any constitutional rights. *Id.* at 22 ("A foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise. [ ] Whatever rights the LTTE and the MEK enjoy ... are therefore *statutory rights only.*" [Emphasis added.])

There are several problems with viewing *PMOI* as one constitutional application of Section 1189. At the outset, I don't believe a statute's constitutionality is ascertainable where it is applied to an entity or individual who does not enjoy constitutional rights. Such a holding would, I believe, violate the justiciability requirements of standing and the prohibition against advisory opinions. Moreover, Section 1189

should not be immune from facial attack simply because it can be applied to an entity that does not enjoy constitutional rights. If such were the case, no statute would fall to a facial challenge because the statute could always be applied to a person or entity unto whom the statute works no constitutional violation. Taken to its logical extreme, such a result would effectively eviscerate the doctrine of facial invalidity. Accordingly, I find that *PMOI* does not illustrate one constitutional application of Section 1189 [13] such as to save Section 1189 from facial attack.[14]

The government next avers that the *NCRI* opinion illustrates a constitutional application of Section 1189. The *NCRI* court did not suffer from any of the justiciability concerns that existed in *PMOI*. Presented with the issue of Section 1189's constitutionality, the *NCRI* court detailed the due process failings of Section 1189 and remanded the matter to the Secretary with instructions that the designated organization be afforded procedural safeguards not provided for in Section 1189.

In assessing the constitutional validity of a statute, courts are to construe the statute to avoid constitutional problems and to resolve any ambiguities in favor of the interpretation that most closely supports constitutionality. *Myers,* 253 F.3d at 468. Thus, contends the government, the *NCRI* court's "construction" of Section 1189

---

**13.** On June 14, 2002, the D.C. Circuit issued its opinion in *32 County Sovereignty Committee, et al. v. Department of State,* 292 F.3d 797(C.A.D.C.2002), wherein the court denied the designated entity's petition for judicial review because the entity did not have a constitutional presence in the U.S. The foregoing analysis regarding *PMOI* is equally applicable to *32 County Sovereignty* since both cases were decided on identical grounds.

**14.** Assuming *arguendo* that Section 1189 may be applied to entities with no constitutional rights, such an application is not extant here

since the MEK enjoys constitutional rights. Therefore, even if defendants' facial challenge to Section 1189 fails, an "as applied" challenge to Section 1189 would still succeed where, as here, the designated entity enjoys constitutional rights. This is so because, as I will attempt to explain, Section 1189 violates the NCRI's due process rights by denying the NCRI a meaningful hearing. Moreover, the *NCRI* opinion does not save Section 1189 from an "as applied" constitutional attack since the D.C. Circuit rewrote Section 1189 in *NCRI,* in violation of the doctrine of separation of powers.

saves the statute from any claim of facial invalidity. However, this is no longer judicial construction; it is impermissible judicial legislation. *See Tillema v. Long,* 253 F.3d 494, 500–01 (9th Cir.2001)(where a statute permits only one permissible interpretation, it is not the province of the federal courts to rewrite the statute to accommodate a different interpretation); *Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984)(courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement); *Lucht v. Molalla River School District,* 225 F.3d 1023, 1029 (2000) (same); *Artuz v. Bennett,* 531 U.S. 4, 10, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) (same).

If I were to accept the government's "construction" argument, I would obliterate any distinction between a facial and as applied challenge to a statute. A court faced with a facially unconstitutional statute could simply "construe" non-existent provisions into a statute to save it from unconstitutionality. Such a result was not countenanced in *Aptheker v. Secretary of State,* 378 U.S. 500, 515, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964)("It must be remembered that '[a]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute ...' or judicially rewriting it." [Citation omit-

ted.] ). Accordingly, I do not find that the *NCRI* opinion illustrates a constitutional construction of Section 1189 that would save the statute from a claim of facial invalidity.

The government, in footnote 4 of its supplemental brief, raises two additional arguments in support of its position. Although the arguments are irrelevant to the claim that Section 1189 is facially invalid, they deserve some discussion because they highlight the import of this decision. First, the government argues that invalidating Section 1189 would have serious negative consequences on this country's counter-terrorism efforts. National security is certainly a matter of grave concern and responsibility. When weighed against a fundamental constitutional right which defines our very existence, the argument for national security should not serve as an excuse for obliterating the Constitution. Every effort should be made to weigh the circumstances where national security concerns can rationally coexist within a constitutional atmosphere. No such attempts were made by the Secretary.

The moral strength, vitality and commitment proudly enunciated in the Constitution is best tested at a time when forceful, emotionally moving arguments to ignore or trivialize its provisions seek a subordination of time honored constitutional protections.[15] Such protections should not be dispensed with where the Secretary has

---

**15.** It is fundamental that the great powers of Congress to conduct war and to regulate the Nation's foreign relations are subject to the constitutional requirements of due process. The imperative necessity for safeguarding these rights to procedural due process under the gravest of emergencies has existed throughout our constitutional history, for it is then, under the pressing exigencies of crisis, that there is the greatest temptation to dispense with fundamental constitutional guarantees which, it is feared, will inhibit governmental action. "[ ] '[I]f society is disturbed

by civil commotion—if the passions of men are aroused and the restraints of law weakened, if not disregarded—these safeguards need, and should receive, the watchful care of those intrusted with the guardianship of the Constitution and laws. In no other way can we transmit to posterity unimpaired the blessings of liberty, consecrated by the sacrifices of the Revolution.' "
*Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 164–65, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) *quoting Ex Parte Milligan,* 4 Wall. 2, 71 U.S. 2, 123, 18 L.Ed. 281 (1866).

not shown how the MEK is a national security threat. *NCRI*, 251 F.3d at 207–08.

The government also cites, in footnote 4 of its supplemental brief, numerous cases where the Supreme Court found statutes unconstitutional but, nevertheless, upheld actions that occurred under the unconstitutional scheme. The government seems to be saying that the result in *NCRI*, wherein the D.C. Circuit found the MEK's designation unconstitutional but, nevertheless, upheld such designation, is legally supportable.

The cases cited by the government are distinguishable from the instant case in one critical respect—they are all civil cases. Where, as here, a criminal defendant is charged with crimes that could result in as much as 15 years imprisonment or more, this court will not abdicate its duty to ensure that the prosecution of such charges comports with due process. I have no doubt that, in similar circumstances, the courts listed in footnote 4 of the government's supplemental briefing would do the same. Having established that Section 1189 admits of no constitutional application, I find that Section 1189 is facially invalid.

"The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). The hearing must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). "[T]hese principles require ... an effective opportunity to defend by confronting any adverse witnesses and by presenting [one's] own arguments and evidence orally." *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Section 1189(a)(3)(A) and Section 1189(b)(2) admit of no other interpretation but that the organization to be designated is precluded from challenging the facts contained in the administrative record or presenting evidence to rebut the proposition that it is a terrorist organization. Such provisions are unconstitutional as violative of due process and render Section 1189 facially invalid.

"[A] law repugnant to the constitution is void, and [the] courts, as well as other departments, are bound by [the constitution]." *Marbury*, 5 U.S. at 180. Section 1189 is invalid since its express provisions are repugnant to the due process clause of the Constitution.[16] Therefore, it follows that a designation pursuant to Section 1189 is a nullity since it is the product of an unconstitutional statute. When a statute is found to be violative of the Constitution, any action taken thereunder, i.e., a designation of a status authorized by such statute, must likewise fail. Any other conclusion is viewed as logically antagonistic.

"The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Marbury*, 5 U.S. at 163. Defendants have a vested legal right not to be deprived of liberty or property without due process of law. Nevertheless, the government seeks to effect such deprivations upon defendants based partly on an unconstitutional

---

**16.** That the D.C. Circuit did not set aside the MEK's designation is a matter separate and apart from the constitutionality of the statute. As stated earlier, the *NCRI* court's decision to uphold the designation was based on a record compiled solely by the Secretary, the veracity of which the D.C. Circuit harbored serious reservations. The fact that a designation was supportable based on a one-sided record does not cloak the designation *procedure* in a veil of constitutionality.

statute. However, the MEK's designation, having been obtained in violation of the Constitution, is a nullity and cannot serve as a predicate in a prosecution for violation of Section 2339B. Accordingly, when an organization is designated as a foreign terrorist organization pursuant to Section 1189, such designation is a nullity and cannot be relied upon in a prosecution under Section 2339B.

IT IS ORDERED that the motion to dismiss indictment based on recent D.C. Circuit opinion filed by defendants ROYA RAHMANI, MUSTAFA AHMADY, HOSSEIN AFSHARI, ALIREZA MOHAMMADMORADI, MOHAMMAD OMIDVAR, NAVID TAJ and HASSAN REZAIE is hereby GRANTED.[17]

---

17. The government argues that the defendants can only challenge the 1999 designation on the basis of the D.C. Circuit's opinion in *NCRI* and, therefore, any charges in the indictment that predate the 1999 designation are not subject to dismissal. I respectfully disagree. Section 1189's language has remained unchanged since its inception in AEDPA in 1996 to the present. As such, the statute operated as unconstitutionally in 1996 as it did in 1999. In fact, a close reading of the *PMOI* opinion (which dealt with the 1997 designation of the MEK) indicates that the D.C. Circuit would have reached the same result as it did two years later in the *NCRI* opinion if the entity had a constitutional presence in the United States. Therefore, the motion to dismiss is granted as to all counts and all defendants.