**Randy WONG, dba TLC Motorcycles, Plaintiff,**

v.

**CITY & COUNTY OF HONOLULU; Sergeant Earl Penarosa; Does 2–10, Defendants.**

**No. CIV.03–00176 ACK/LEK.**

United States District Court, D. Hawai'i.

Aug. 26, 2004.

Jack F. Schweigert, Honolulu, HI, for Plaintiff.

James C. Butt, Honolulu, HI, for Defendants.

## ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDG-MENT

KAY, District Judge.

### BACKGROUND

The matter before the Court arises on Defendants City and County of Honolulu and Earl Penarosa's motion for summary judgment in a case stemming from the removal and destruction of a number of motorcycles parked in the area around Plaintiff Randy Wong's motorcycle repair shop, TLC Motorcycles.

The relevant facts are as follows. On May 1, 2001 the City and County of Honolulu conducted a sweep of derelict vehicles on Cummins Street in the vicinity of Plaintiff's Shop, in which approximately 110 motorcycles and mopeds[1] were removed and subsequently destroyed by taking them straight to a junkyard to be scrapped. The May 1, 2001 sweep was conducted as a result of Defendant Penarosa's April 18, 2001 investigation into a complaint about improper parking of a number of motorcycles in the street and curbside near Plaintiff's shop. Defendant Penarosa asked Plaintiff to remove the motorcycles.[2] Plaintiff contends that Defendant Penarosa gave him until May 7, 2001 to remove the motorcycles.[3]

As a result of the May 1, 2001 sweep, Plaintiff filed a Complaint with this Court on April 17, 2003.[4] Plaintiff asserts claims under 42 U.S.C. § 1983, contending violations of his rights under the Fourth, Fifth, and Fourteenth Amendments, as well as state law claims of breach of contract, conversion of property, and trespass to chattels. *See* (Second Amended Complaint at 3).

Defendants filed the instant motion for summary judgment on April 16, 2004. Plaintiff filed his opposition on June 3, 2004. Defendants filed their Reply on June 23, 2004.

Following the Court's June 21, 2004 certification to the State of Hawaii Attorney General informing him of a constitutional challenge to a state statute, the State of Hawaii filed a petition for leave to file an Amicus Brief on July 1, 2004. The Court granted the petition that same day.[5] Amicus State of Hawaii filed its brief on July 8, 2004, and Plaintiff filed his response on July 14, 2004.[6]

On July 15, 2004, Amicus State of Hawaii filed a petition to appear and present oral argument, which the Court granted on July 20, 2004.[7]

Oral argument took place on July 21, 2004. Jack Schweigert appeared on behalf of Plaintiff Randy Wong, Marie Gavigan appeared on behalf of Defendants City and County of Honolulu and Earl Penarosa, and Kimberly Tsumoto appeared on behalf of Amicus Curiae State of Hawaii.

---

1. Although the parties refer to a number of mopeds in their memoranda, the Court refers to the vehicles as motorcycles for simplicity.

2. Defendant Penarosa asserts that he spoke with Plaintiff on a number of occasions regarding the motorcycles prior to April 18, 2001.

3. Defendant Penarosa disputes making any such statement.

4. Plaintiff filed his First Amended Complaint on August 19, 2003, and filed his Second Amended Complaint on May 7, 2004.

5. Neither party opposed the State's motion.

6. Plaintiff filed a Notice of Corrections with respect to his response on July 15, 2004.

7. The Court notes that the parties did not file any opposition to the Amicus State of Hawaii's petition to present oral argument.

### STANDARD

█ The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[8] Fed. R.Civ.P. 56(c).

█ "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[9] *Thrifty Oil Co. v. Bank of America Nat'l Trust & Sav. Ass'n,* 310 F.3d 1188, 1194 (9th Cir.2002) (quoting *Union Sch. Dist. v. Smith,* 15 F.3d 1519, 1523 (9th Cir.1994)) (internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. *See, e.g., T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). So, too, the Court's role is not to make credibility assessments. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Id.* at 250–51, 106 S.Ct. 2505. Or, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv.,* 809 F.2d at 631.

When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgement." *UA Local 343 of the United Ass'n of Journeymen & Apprentices v. Nor–Cal Plumbing, Inc.,* 48 F.3d 1465, 1471 (9th Cir.1994). Upon showing a prima facie case, it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule." *Id.* (quoting Fed.R.Civ.P. 56(e)).

The nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex,* 477 U.S. at 322–

8. Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence. Fed.R.Civ.P. 56(e). Legal memoranda and oral argument are not evidence and do not create issues of fact. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

9. Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' Int'l Ass'n,* 804 F.2d 1472, 1478 (9th Cir.1986).

23, 106 S.Ct. 2548; *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348; *California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002); *see also T.W. Elec. Serv.*, 809 F.2d at 630. Summary judgment may be granted " '[i]f the evidence is merely colorable or is not significantly probative.' " *Nor–Cal Plumbing*, 48 F.3d at 1471 (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505) (modification in original).

### DISCUSSION

■ As an initial matter, the Court notes that it is well-settled that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* ... local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 166–67 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). *See also Monell v. Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (stating that "official capacity suits generally represent only another way of pleading an action against an entity .of which an officer is an agent"); *cf. Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). The Court accordingly finds that the claims asserted against the

Defendant Penarosa in his official capacity duplicates the claims asserted against the City and County of Honolulu and therefore DISMISSES Plaintiff's official capacity claims against Defendant Penarosa.

### I. *Constitutionality of Hawaii Revised Statutes §§ 290–8 and 290–9* [10]

Plaintiff asserts that H.R.S. §§ 290–8 and 290–9 are unconstitutional because they do not provide for notice and hearing.

■ Any inquiry into the constitutionality of a statute must begin with the presumption that the statute is constitutional. *See United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *United States ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827, 830 (9th Cir.1993). Accordingly, for Plaintiff to succeed on a constitutional challenge, Plaintiff must overcome this presumption.

■ To successfully assert a facial challenge to a statute, the challenger must "establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), *quoted in S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461, 467 (9th Cir.2001). Furthermore, "considerations of comity suggest that a federal court should not paint with too broad a brush on the canvas of state [highway] regulation." *Safeway Stores, Inc. v. Bd. of Agric.*, 590 F.Supp. 778, 786 (D.Haw.1984).

H.R.S. §§ 290–8 [11] and 290–9 [12] allow for the immediate disposition of derelict vehicles without complying with the notice re-

---

10. When a plaintiff alleges a violation of his or her constitutional rights based on the enforcement of a statute, the Court must consider the constitutionality of the statute. *Grossman v. City of Portland*, 33 F.3d 1200, 1203–04 (9th Cir.1994), *cited in Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 879 (9th Cir. 2002).

11. H.R.S. § 290–8 defines "derelict vehicle."

12. H.R.S. § 290–9 waives the notice requirements set forth for an impounded vehicle if the vehicle satisfies the definition of derelict.

quirements set forth for vehicles impounded as abandoned under H.R.S. § 290–1.[13] *See* H.R.S. chs. 290–1, 290–2, 290–5, 290–8, 290–9 (2004). H.R.S. 290–8 provides that:

A vehicle shall be deemed a derelict . . . if major parts have been removed or material damage to the vehicle has rendered the vehicle inoperable *and* one of the following conditions exists:

(1) The vehicle is registered for the current registration period and the registered and legal owners no longer reside at the addresses on record with the county director of finance;

(2) The vehicle has been registered for the current or previous registration period *and* the registered and legal owners disclaim ownership;

(3) The vehicle identification number and license plates have been removed so as to nullify efforts to locate or identify the current registered and legal owners;

(4) The vehicle has not been registered for the current or previous registration periods;

(5) The vehicle registration records of the county director of finance contain no record that the vehicle has ever been registered in the county; or

(6) The vehicle model is ten model years old or older.

Haw.Rev.Stat. § 290–8 (emphasis added).

As the H.R.S. contains a severability provision, *see* Haw.Rev.Stat. § 1–23, the Court must consider the constitutionality of each of the conditions enumerated in § 290–8. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 338–39, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (directing that when construing a statute a court must give "terms connected by a disjunctive . . . separate meanings, unless the context dictates otherwise"), *quoted in Tillema v. Long*, 253 F.3d 494, 499 (9th Cir.2001); *In re Pac.-Atl. Trading Co.*, 64 F.3d 1292, 1302 (9th Cir.1995) ("In construing a statute, a court should interpret subsections written in the disjunctive as setting out separate and distinct alternatives."), *quoted in Tillema*, 253 F.3d at 499–500. Conditions (1)-(5) as set forth in H.R.S. § 290–8 contemplate situations where notice to the legal and registered owners is not possible, or where ownership has been disclaimed. *E.g.*, Haw.Rev.Stat. § 290–8 (conditions (1)-(5)). Moreover, conditions (1)-(5) are rationally related to their purpose. The Court accordingly does not invalidate H.R.S. §§ 290–8 and 290–9 on their face as to conditions (1) through (5) as set forth in § 290–8.

■ However, after careful deliberation, the Court cannot conceive of a situation where disposition of a vehicle without notice would satisfy constitutional requirements just because the vehicle is ten-model-years-old or older, even though the removal of major parts or material damage has rendered the vehicle inoperable. Under the three-part test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), a court must consider (1) the private interest affected by the governmental action, (2) the likelihood of an erroneous deprivation, and the probable value, if any, of additional or substitute safeguards, and (3) the government's interest, including the function involved and the fiscal or administrative burdens that the additional or substitute procedural requirement would entail.

---

**13.** H.R.S. § 290–1 provides for the impoundment and disposition of a vehicle if "unattended for a continuous period of more than twenty-four hours and it is unlawfully parked on any public highway or other public property," subject to notice and other requirements set forth in other sections of H.R.S. ch 290. *See* Haw.Rev.Stat. §§ 290–2, 290–5.

Here, an owner holds a strong property interest in his or her vehicle, as discussed *infra*. *See infra* Discussion section 2.B.1 (citing *Soffer v. City of Costa Mesa*, 607 F.Supp. 975, 981 (C.D.Cal.1985); *Price v. City of Junction*, 711 F.2d 582, 589 (5th Cir.1983); *Kohn v. Mucia*, 776 F.Supp. 348, 358 (N.D.Ill.1991); *Walsh v. Nevada*, 110 Nev. 1385, 887 P.2d 1239, 1241 (1994); *Fla. Pawnbrokers & Secondhand Dealers Ass'n v. City of Fort Lauderdale*, 699 F.Supp. 888, 891 (S.D.Fla.1988)). There is a likelihood of an erroneous deprivation, and the probable value of additional or substitute safeguards is quite high, as H.R.S. §§ 290–8 and 290–9 do not provide for *any* notice or hearing under the particular circumstances of an "inoperable" ten-year-old vehicle.[14]. *See Perry v. Vill. of Arlington Heights*, 905 F.Supp. 465, 468–69 (N.D.Ill.1995); *Price*, 711 F.2d at 590; *Brown v. Thompson*, 91 Hawai'i 1, 979 P.2d 586, 596 (1999). By contrast, the governmental interest [15] in saving time and money by providing for the immediate disposition of ten-year-old "inoperable" vehicles [16] is significantly outweighed by the interest of the vehicle owner and the high likelihood of erroneous deprivation. *See Propert*, 948 F.2d at 1335; *see also Remm v. Landrieu*, 418 F.Supp. 542, 546 n. 6 (E.D.La.1976) ("It is well settled that mere administrative convenience is no justification for deprivation of property without due process." (citing *Cleveland Bd. of Ed. v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971))). Moreover, the burden of providing notice and an opportunity to meaningfully respond is slight, especially in light of the currently existing scheme outlined in H.R.S. §§ 290–2—290–7 that applies to the impoundment and disposition of "abandoned" vehicles. *See Brown*, 979 P.2d at 597; *Propert*, 948 F.2d at 1335; *accord Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1343 (9th Cir.1977). The Court therefore finds condition (6) as set forth in H.R.S. § 290–8 unconstitutionally violates the requirements of Due Process.[17] *See Schneider v. County of San Diego*, 28 F.3d

14. The Court moreover notes that H.R.S. §§ 290–8 and 290–9 do not set forth any post-deprivation proceedings or remedies in the event of an erroneous deprivation under these conditions.

15. The Court recognizes that the government does have an interest in keeping the highways clear of derelict vehicles, and that exigencies exist which require removal of an "inoperable" vehicle without notice or hearing, such as where the vehicle creates a traffic hazard. *E.g.*, *Padberg v. McGrath–McKechnie*, 108 F.Supp.2d 177, 189 (E.D.N.Y.2000); *Brown*, 979 P.2d at 596–97. However, once the vehicle has been removed, any exigency has been extinguished, and the government's interest in clear highways has been satisfied. *See Propert v. Dist. of Columbia*, 948 F.2d 1327, 1335 (D.C.Cir.1991) ("Although [a municipality] may have a strong interest in the prompt removal of supposed junk vehicles from the streets, its interest in the immediate destruction of such vehicles is far from apparent."); *accord Brown*, 979 P.2d at 596–97.

16. The Hawaii House of Representatives Standing Committee Report No. 794 states that "[b]y enabling older model vehicles, which meet the physical condition of a derelict to be declared derelict, regardless of the vehicle's registration status, significant time and cost savings could be incurred by the city." Haw. H.R. Stand. Comm. Rep. No. 794, *reprinted in* 1985 Haw. H.R.J. at 1375; *see also* Haw. S. Stand. Comm. Rep. No. 704, *reprinted in* 1985 Haw. S.J. at 1191 (stating that "[t]he [Honolulu City and County Department of Finance testified] that the changes [made by] the bill would not only enable a more rapid removal of abandoned vehicles, but would also relieve demand on the City's storage areas").

17. Amicus State of Hawaii contends that H.R.S. §§ 290–8 and 290–9 are facially con-

89, 93 (9th Cir.1994); *Draper v. Coombs*, 792 F.2d 915, 923 (9th Cir.1986); *Propert*, 948 F.2d at 1335; *Soffer*, 607 F.Supp. at 983; *see also Craig v. Carson*, 449 F.Supp. ·385, 395 (M.D.Fla.1978) (finding that "[t]he non-existence of any form of procedural due process in [a city's ordinances covering impoundment of vehicles] leaves them absolutely unconstitutional on their face"); *cf. Nolt v. Isadore*, 590 F.Supp. 518, 522 (D.Alaska 1984) (finding an impoundment statute "constitutionally defective in that [it contained] no provision for a meaningful hearing even after seizure" (citing *Stypmann*, 557 F.2d at 1344); *Graff v. Nicholl*, 370 F.Supp. 974 (N.D.Ill.1974)).

## II. Federal Law Claims

### A. City and County of Honolulu

■ A municipality is subject to liability under § 1983 when the enforcement of a municipal policy or custom was "the moving force" of the violation of federally protected rights.[18] *City of Canton v. Harris*, 489 U.S. 378, 385–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As explained by the Supreme Court, municipal liability under § 1983 may be premised upon an

stitutional because "nothing in these statutes prohibit the County from providing Plaintiff with a hearing prior to destroying the vehicles"—in other words, "[b]ecause §§ 290–8 and 290–9 can be employed in conjunction with a hearing, they are obviously not unconstitutional in every application," and therefore "cannot be facially invalidated." (State of Hawaii Amicus Brief at 12–13). However, adoption of the State's "construction" of §§ 290–8 and 290–9 would require that the Court impermissibly engage in judicial legislation. *E.g., United States v. Rahmani*, 209 F.Supp.2d 1045, 1058 (C.D.Cal.2002) (citing *Tillema*, 253 F.3d at 500–01); *Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549) (1984); *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1029 (2000); *Artuz v. Bennett*, 531 U.S. 4, 10, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000)).

As explained by the Supreme Court in *Aptheker v. Sec'y of State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964):

It must be remembered that "[a]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute ..." or judicially rewriting it. To put the matter another way, this Court will not consider the abstract question of whether Congress might have enacted a valid statute but instead must ask whether the statute that Congress did enact will permissibly bear a construction rendering it free from constitutional defects.

*Id.* at 515, 84 S.Ct. 1659 (citation omitted) (quoting *Scales v. United States*, 367 U.S. 203, 211, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961)), *quoted in Rahmani*, 209 F.Supp.2d at 1057; *accord Badaracco*, 464 U.S. at 398, 104 S.Ct. 756; *Artuz*, 531 U.S. at 10, 121 S.Ct. 361. In other words, "[a] court faced with a facially unconstitutional statute [cannot] simply 'construe' non-existent provisions into a statute to save it from unconstitutionality. *Rahmani*, 209 F.Supp.2d at 1057."

Here, the plain language of H.R.S. §§ 290–8 and 290–9 is clear: the statutes simply do not contain any provision for any pre-or post-deprivation notice or hearing—in fact, § 290–9 explicitly waives the notice requirements set forth by other sections of H.R.S. ch. 290. Thus, there are no ambiguities, and despite the flexible nature of procedural due process, the Court must construe §§ 290–8 and 290–9 as enacted by the legislature, without considering any additional "provisions." *Id.; see Craig v. Carson*, 449 F.Supp. 385, 395 (M.D.Fla.1978) (citing *Stypmann*, 557 F.2d at 1343; *Remm*, 418 F.Supp. at 548 n. 12; *Tedeschi v. Blackwood*, 410 F.Supp. 34, 45 (D.Conn.1976); *Lee v. Thornton*, 538 F.2d 27, 31 (2d Cir.1976)).

18. However, "[r]espondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), *quoted in Tokuhama v. City & County of Honolulu*, 751 F.Supp. 1385, 1394 (D.Haw. 1989).

officially promulgated policy; a custom or persistent practice; deliberately indifferent training that is the proximate cause of the violation of the plaintiff's federally protected rights; or a single decision by an official with final decision making authority. *See Monell,* 436 U.S. at 695, 98 S.Ct. 2018; *City of Canton,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412; *Pembaur v. Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

■ Plaintiff asserts that Defendant City and County of Honolulu is subject to liability under § 1983 on the grounds that Section 15–4.1 of the Revised Ordinances of Honolulu ("R.O.H.") implements H.R.S. §§ 290–8 and 290–9,[19] and therefore constitutes an official policy statement by the municipality. However, mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability. *Surplus Store & Exchange, Inc. v. City of Delphi,* 928 F.2d 788, 791–92 (7th Cir. 1991). R.O.H. § 15–4.1 provides, in relevant part, simply that "[i]t shall be the duty of the officers of the police department or such officers as are assigned by the chief of police to enforce the provisions of [the City and County of Honolulu] traffic code and all of the state vehicle laws applicable to street traffic in the City and County of Honolulu." The Ordinance merely reflects a declaration of policy by the City and County to enforce state law (and thus the policy of the state government), which bears only a severely attenuated causal connection to the asserted violations of Plaintiff's federal rights. *See Surplus Store,* 928 F.2d at 791–92 (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Thompson v. Duke,* No. 84 C 5082, 1987

WL 33188 (N.D.Ill. Jan. 4, 1988)). It does not constitute an express incorporation and adoption of state law and policy. *See Fla. Pawnbrokers & Secondhand Dealers Ass'n, Inc. v. City of Fort Lauderdale,* 699 F.Supp. 888, 890 (S.D.Fla.1988) (finding the City of Fort Lauderdale liable under § 1983 for enforcing Florida statutory law because (1) a Fort Lauderdale ordinance "essentially incorporated [an unconstitutional state] statute into the municipal code" and (2) the ordinance furthermore expressed the policy statement that " 'the City also desires to facilitate the recovery of stolen property for return to the victims of burglaries and theft.' " (quoting Fort Lauderdale, Fla., Code of Ordinances No. C–87–17, at 1 (March 3, 1987))), *quoted in Surplus Store,* 928 F.2d 788, 792; *see also Fla. Pawnbrokers & Secondhand Dealers Ass'n, Inc. v. City of Fort Lauderdale,* 711 F.Supp. 1084, 1085 (S.D.Fla.1989) (stating that "[t]he [C]ity [of Fort Lauderdale] did not merely enforce the state statute. As held in the prior order of this court, the City of Fort Lauderdale had a policy of using the statute as one part of a comprehensive plan for dealing with the potential of the pawnbroking business as a market for stolen property."). As explained by the Seventh Circuit in *Surplus Store & Exchange, Inc. v. City of Delphi:*

> It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality.

**19.** Plaintiff asserts that H.R.S. §§ 290–8 and 290–9 are unconstitutional because they do not provide for notice and hearing.

928 F.2d at 791–92 (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Thompson v. Duke,* No. 84 C 5082, 1987 WL 33188 (N.D.Ill. Jan. 4, 1988)).

Furthermore, Plaintiff does not assert or bring forth evidence to show that the alleged violation of his federal rights was because of a municipal custom or persistent practice; nor a single decision by an official with final decision making authority.[20] Although Plaintiff asserted at the July 21, 2004 hearing that Defendant City and County should be liable for lack of training, he does not bring forth any evidence to support this assertion. *See British Airways Bd.,* 585 F.2d at 952 (stating that legal memoranda and oral argument are not evidence and do not create issues of fact). Furthermore, Plaintiff does not controvert the declarations of Defendant Penarosa and Steven Wong stating that they received training. *See* (Mar. 18, 2004 Penarosa Decl. ¶ 7, *in* Defendant's CSF); (Mar. 30, 2004 Wong Decl. ¶ 5, *in* Defendant's CSF). The Court accordingly finds no basis for imposing liability on Defendant City and County of Honolulu under § 1983, and therefore GRANTS Defendant's motion as to Plaintiff's federal law claims against Defendant City and County.

## B. *Defendant Penarosa (Qualified Immunity)*

Defendant Penarosa argues that summary judgment is warranted in this case because he is entitled to qualified immunity under federal law. The doctrine of qualified immunity shields public officials performing discretionary functions from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[21] *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In deciding whether an official is entitled to qualified immunity, a court must first inquire whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *cited in Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir.2001). If answered affirmatively, the next step is to consider whether the right was "clearly established" at the time the alleged violation occurred, and if so, whether a reasonable official could have believed his or her conduct was lawful. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *see also Mendoza v. Block,* 27 F.3d 1357, 1360 (9th Cir.1994) (" 'If the controlling law is not clearly established, a reasonable person would not be expected to know how to structure his conduct in order to avoid liability.' ").

The United States Supreme Court instructs that the question of whether a right is clearly established must be evalu-

---

**20.** The Court notes that Plaintiff does not dispute Defendant Penarosa's declaration stating that he does not have final authority as to municipal policy.

**21.** The policy concern underlying qualified immunity is that subjecting officials to personal liability for actions that do not clearly violate the law will "unduly inhibit [them] in the discharge of their duties" and impede effective government operations. *See Johnson v. Newburgh Enlarged School District,* 239 F.3d 246, 250 (2d Cir.2001) (citing *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). A ruling on a defendant's entitlement to qualified immunity "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive" because it serves as "an entitlement not to stand trial or face the other burdens of litigation." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. The Ninth Circuit has recognized that "policy considerations favor a liberal application of immunity." *Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir.1986).

ated "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Statements of general propositions are not sufficient; "the dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)); *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ("As the qualified immunity defense has evolved it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.")

At the same time, however, the Ninth Circuit, as well as the Supreme Court, has recognized that "[i]t is not necessary that a prior decision rule 'the very action in question' unlawful to deny a defendant the protection of qualified immunity." *Koch*, 96 F.3d at 1304 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *Devereaux*, 263 F.3d 1070, 1074–75 (citing *United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), for the proposition that case law recognizing a specific right is not necessary and that all that is required is that "government officials have a 'fair and clear warning' that their conduct is unlawful"). In other words, "[t]here need not be a case dealing with these particular facts to find [a defendant'] conduct unreasonable." *Doe v. Hawaii*, 334 F.3d 906, 910 (9th Cir.2003) (citing *Headwaters Forest Def. v. City of Humboldt*, 276 F.3d 1125, 1131 (9th Cir.2002)).

Plaintiff has sued Defendant Penarosa for allegedly violating his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. His Second Amended Complaint indicates that the basis for Defendant Penarosa's liability is his involvement in the removal and subsequent destruction of the motorcycles in the area of Plaintiff's Shop.

Viewing the factual allegations in the light most favorable to Plaintiff,[22] this Court finds that Defendant Penarosa coordinated[23] the removal and destruction of approximately 110 motorcycles from the area around Plaintiff's shop on May 1, 2001 despite Defendant Penarosa having informed Plaintiff that he had until May 7, 2001 to remove the motorcycles.[24]

### 1. *Fourth Amendment* [25]

◼ Plaintiff asserts that the removal and destruction of the motorcycles outside

---

**22.** When analyzing a motion for summary judgment on the ground of qualified immunity, a court must assume all disputed facts and draw all inferences in favor of the non-movant. *Ceballos v. Garcetti*, 361 F.3d 1168, 1172 (9th Cir.2004) (citing *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151); *DiRuzza v. County of Tehama*, 206 F.3d 1304, 1314 (9th Cir.2000).

**23.** A reasonable inference can be drawn that the removal and destruction occurred at Defendant Penarosa's direction. Defendant Penarosa visited the site and discussed the motorcycles with Plaintiff a number of times. (Defendants' CSF ¶¶ 2, 3). Moreover, Defendant Penarosa initiated the cleanup procedure. *Id.* ¶ 7.

The Court notes that a police officer is subject to liability in his individual capacity if "he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir.1991) (quotation marks omitted) (brackets omitted) (citing *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir.1986)).

**24.** In his declaration, Defendant Penarosa asserts that he did not allow Plaintiff until May 7, 2001 to remove the motorcycles.

**25.** The Court notes that it does not analyze Plaintiffs claims under Substantive Due Process because of the more specific provisions of the Fourth Amendment. *See Doe v. Hawaii*, 334 F.3d at 908 (citing *Graham v. Con-*

his shop constituted an unreasonable seizure in violation of his rights under the Fourth Amendment.[26] As explained by the Supreme Court, "[a] 'seizure' of property ... occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " *Soldal v. Cook County,* 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).

■ Viewing the facts in the light most favorable to Plaintiff, the Court finds that he possesses the requisite possessory interest, as "[a] person's interest in his or her automobile is certainly significant." *Soffer,* 607 F.Supp. at 981 (citing *Goichman v. Rheuban Motors, Inc.,* 682 F.2d 1320, 1324 (9th Cir.1982)); *see also Price,* 711 F.2d at 589 ("Whether a junk car has little or great value, it is constitutionally protected property."); *Kohn,* 776 F.Supp. at 358. Moreover, Plaintiff held a possessory interest in the motorcycles left for repair at his shop by virtue of the bailment relationship. *See, e.g., Walsh,* 887 P.2d at 1241; *cf., e.g., Fla. Pawnbrokers,* 699 F.Supp. at 891. The Court thus finds that a seizure occurred when the motorcycles were removed and subsequently destroyed.

Turning to the question of the reasonableness of the seizure, the Court finds

that questions of fact exist as to the designation of the motorcycles as derelict and their subsequent destruction under H.R.S. §§ 290–8 and 290–9 and therefore does not reach the issue of the warrantless nature of the seizure.[27]

A determination that a vehicle is "derelict" requires (1) that the vehicle is rendered "inoperable" by material damage to the vehicle or the removal of major parts; and (2) satisfaction of one of a number of conditions listed in the derelict vehicle statute. *See* Haw.Rev.Stat. § 290–8.

■ First, the Court finds that a genuine issue of material fact exists with respect to a number of the motorcycles as to the determination that they were inoperable. As neither Defendant Penarosa nor any other person involved in the removal of the motorcycles explained the basis for determining that any particular motorcycle fit the definition of inoperable, the Court is precluded from concluding whether the determination was reasonable.

Second, a genuine issue of material fact also exists with respect to the secondary requirements set forth in H.R.S. § 290–8. Although the March 30, 2004 Declaration of Steven Wong states that the motorcycles in question satisfied the secondary requirements of H.R.S. § 290–8, *see* (Mar. 30, 2004 Steven Wong Decl. ¶ 4), the Dec-

---

*nor,* 490 U.S. 386, 394, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Armendariz v. Penman,* 75 F.3d 1311, 1319 (9th Cir.1996)).

26. The Fourth Amendment provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

27. The Court nevertheless notes that "[t]he Fourth Amendment's warrant requirement

applies to entries into private premises to search for and abate suspected or declared nuisances." *Schneider v. County of San Diego,* 28 F.3d 89, 91 (9th Cir.1994) (citing *Michigan v. Tyler,* 436 U.S. 499, 504–05, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)). By contrast, the motorcycles were seized from a public street and from curbside parking fronting Plaintiff's Shop. Plaintiff thus had no reasonable expectation of privacy in the areas where the motorcycles were located. *See id.* at 91–92. Accordingly, no warrant would be required to seize the motorcycles, if the designation of the motorcycles as derelict was reasonable, i.e. that there was a reasonable basis to seize the motorcycles. *See id.*

laration does not specify which of the secondary criteria were met with respect to any of the motorcycles. Furthermore, Plaintiff asserts that neither Defendant Penarosa nor any of the persons involved in the removal of the motorcycles conducted a search of the vehicle registration records. The Court is therefore unable to determine the reasonableness of the determination that the secondary requirements of H.R.S. § 290–8 were met.

Third, the parties' dispute over the existence of the May 7, 2001 deadline creates a genuine issue of material fact that likewise prevents the Court from making a determination as to the reasonableness of the removal and destruction of the motorcycles.

Thus, because genuine issues of material fact exist, the Court is precluded from granting qualified immunity as to Plaintiff's Fourth Amendment claim against Defendant Penarosa. *E.g., Sloman v. Tadlock,* 21 F.3d 1462, 1468 (9th Cir.1994) (reiterating that although the determination of qualified immunity is "ordinarily a question for the court," a district court should not make the determination at the summary judgment stage when "there is a genuine dispute as to 'the facts and circumstances within an officer's knowledge' or 'what the officer and claimant did or failed to do'") (quoting *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir. 1993)).

### 2. *Fifth Amendment*

Plaintiff alleges that the removal and destruction of the motorcycles from the area around his shop represented an unlawful taking without just compensation, in violation of the Fifth Amendment. However, "it was recognized [long ago] that 'all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,' and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it." *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 491–92, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) (citations omitted) (quoting *Mugler v. Kansas,* 123 U.S. 623, 665, 8 S.Ct. 273, 31 L.Ed. 205 (1887)) (citing *Beer Co. v. Massachusetts,* 97 U.S. 25, 32, 7 Otto 25, 24 L.Ed. 989 (1877); *Mugler,* 123 U.S. at 664, 8 S.Ct. 273); *see also Miller v. Schoene,* 276 U.S. 272, 279–80, 48 S.Ct. 246, 72 L.Ed. 568 (1928) (noting that "where the public interest is involved[,] preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property").

 Although removal and immediate disposition under H.R.S. §§ 290–8 and 290–9 would be in substantial advancement of legitimate state interests, and cannot be considered a violation of the Takings Clause, *see Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1022–24, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), genuine issues of material fact exist as to whether the motorcycles were properly designated as derelict under H.R.S. § 290–8, and whether Defendant Penarosa acted arbitrarily and capriciously by removing and destroying the motorcycles on May 1, 2001 after providing a disputed deadline of May 7, as discussed *supra.* The Court is accordingly precluded from granting qualified immunity as to Plaintiff's Fifth Amendment Claim against Defendant Penarosa. *E.g., Sloman,* 21 F.3d at 1468 (quoting *Act Up!,* 988 F.2d at 873).

### 3. *Procedural due process*

Plaintiff asserts that the motorcycles in the area around his shop were removed and destroyed in violation of his Four-

teenth Amendment Procedural Due Process rights. To succeed on his claim, Plaintiff must establish (1) a liberty or property interest protected by the constitution, (2) a deprivation of that interest by the government, and (3) the lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993).

As discussed *supra*, Plaintiff held a significant interest in the motorcycles—even the ones for which he did not hold title—of which he was deprived when the motorcycles were removed and subsequently destroyed. Since a protected property interest has been implicated, the Court turns to the basic requirements of procedural due process, which are a right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Determination of the specific procedures required to satisfy due process requires a balancing of several factors: (1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893 (1976).

■■■ Here, the only notice of the pending removal and destruction given to Plaintiff was an oral warning apparently given at the time of Defendant Penarosa's April 18, 2001 site investigation. The Court finds such notice inadequate to satisfy the requirements of Due Process. Furthermore, even assuming that the oral notice provided by Defendant Penarosa was adequate, Plaintiff was not given any opportunity for pre-or post-deprivation hearing on the matter of the determination that the motorcycles were derelict.

Although lack of pre-removal notice and opportunity for hearing does not necessarily violate due process, the lack of notice and opportunity for hearing before the destruction of the motorcycles clearly violates Plaintiff's procedural due process rights.[28] *E.g., Schneider*, 28 F.3d at 93; *Draper*, 792 F.2d at 923; *Propert*, 948 F.2d at 1335; *Soffer*, 607 F.Supp. at 983. The Court therefore finds that Plaintiff satisfies the first prong of the qualified immunity analysis.

Turning to the question of whether Plaintiff's rights were clearly established at the time of the alleged violation. As discussed *supra*, this inquiry must be made with the appropriate specificity. Thus, the question before the Court is whether, in light of clearly established law, reasonable officers could have believed that the removal and immediate disposition of the motorcycles without notice or pre-or post-deprivation hearings was lawful—i.e. whether Plaintiff's Wong's right to notice and a hearing was so clearly established that it was unreasonable for Defendant Penarosa and the others involved in the removal of the motorcycles to rely on H.R.S. §§ 290–8 and 290–9.[29] *Carey*, 279 F.3d at 881 (citing *Michigan v. DeFillippo*,

---

**28.** The Court moreover notes that procedures already exist for providing notice and hearing where a vehicle is impounded as abandoned, as well as where a vehicle has been cited for violating the Hawaii State traffic regulations. *See, e.g.,* Haw.Rev.Stat. §§ 286–22(d), 290–2, 290–4.

**29.** The Court notes that if the removal of the motorcycles was viewed as an "impoundment" under H.R.S. § 290–1, Defendant Penarosa' conduct would not be reasonable, since it deprived Plaintiff of his right to notice and an opportunity to be heard, in direct contravention of H.R.S. § 290–2.

443 U.S. 31, 37–38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)).

■ While H.R.S. §§ 290–8 and 290–9 are silent as to the necessity of a pre-or post-deprivation hearing[30] and neither statute has been declared unconstitutional, Defendant Penarosa's reliance on these statutes does not necessarily entitle him to qualified immunity. Although as a general rule, "[p]olice are charged to enforce laws until and unless they are declared unconstitutional,"[31] *Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the Supreme Court recognized a "possible exception [to this general rule where] a law [was] so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id.*

■ As explained by the Ninth Circuit in *Carey v. Nevada Gaming Control Board*, "[a]lthough state officials who reasonably rely on statutes are generally presumed to act reasonably, an official may nevertheless be liable for enforcing a statute that is patently violative of fundamental constitutional principles." *Carey*, 279 F.3d at 881 (quoting *Grossman*, 33 F.3d at 1209) (citing *DeFillippo*, 443 U.S. at 38, 99 S.Ct. 2627). The *Carey* court thus found a state official's conduct unreasonable, even though the official relied on a state statute, because of the existence of directly apposite case law holding that such conduct

violated constitutional principles.[32] *Id.; see also Brown v. Thompson*, 91 Hawai'i 1, 979 P.2d 586, 601 (1999) (noting, in dicta in a case where a statute was "silent as to the right of the owner of an impounded vessel to a hearing," that "[h]ad there been a clearly established body of case law regarding the right to a hearing upon the impoundment of an allegedly derelict vessel, the statute's silence on the subject could not have rendered reasonable any belief by [the public officials] to the contrary.") (citing *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

With respect to the case before this Court, the Ninth Circuit and the D.C. Circuit have held for years that notice and a hearing must be provided to a person with a protected interest in a vehicle before the vehicle may be destroyed.[33] *E.g., Draper*, 792 F.2d 915 (9th Cir.1986); *Propert*, 948 F.2d at 1335; *Soffer*, 607 F.Supp. at 983; *Schneider*, 28 F.3d at 93. Although Defendant Penarosa argues that he provided Plaintiff notice and an opportunity to respond (by removing the motorcycles), the Court must view all disputed facts and draw all reasonable inferences in the light most favorable to Plaintiff. The Court accordingly finds the law clearly established, and that Defendant Penarosa's reliance on H.R.S. §§ 290–8 and 290–9 was not reasonable. The Court therefore finds that a genuine issue of material fact exists

---

**30.** H.R.S. § 290–9 provides that no notice is required for disposition of a vehicle that is declared derelict.

**31.** The Supreme Court explained that "[t]he enactment of a law [generally] forecloses speculation by enforcement officers concerning its constitutionality," because "[s]ociety would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." *Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

**32.** Although bound by the decisions of the Ninth Circuit, the Court nevertheless notes that the holding in *Carey*, in some situations, places a police officer in the precarious position of trying to determine whether a statute is "patently violative of fundamental constitutional principles."

**33.** The Court moreover notes that the same cases indicate that in the event a pre-impoundment or disposition notice and hearing do not occur, post-impoundment or disposition notice and hearing must be provided.

that precludes it from concluding as a matter of law that Defendant Penarosa is entitled to qualified immunity.

### 4. *Conclusion*

As discussed *supra,* the Court finds that genuine issues of material fact exist and is therefore precluded from determining whether Defendant Penarosa is entitled to qualified immunity under federal law. The Court therefore DENIES Defendants' motion with respect to Plaintiff's federal law claims against Defendant Penarosa.

### III. *State Law Claims*

#### A. *Breach of Contract*

The parties do not directly address Plaintiff's claim for breach of contract. Because Defendants requested "summary judgment as to all Counts," (Defendants' Motion at 9), the Court finds that Plaintiff has not brought forth any evidence or made allegations of the essential elements of a contract in response to Defendants' motion for summary judgment.

 The elements of a contract are: "'an offer and acceptance, consideration, and parties who have the capacity and the authority to agree as they do.'" *In re Doe,* 90 Hawai'i 200, 978 P.2d 166, 174 (1999) (quoting *Dowsett v. Cashman,* 2 Haw.App. 77, 625 P.2d 1064, 1068 (1981). Furthermore, "'[t]here must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract.'") *Carson v. Sai-*

*to,* 53 Haw. 178, 489 P.2d 636, 638 (1971) (quoting *Honolulu Rapid Transit Co. v. Paschoal,* 51 Haw. 19, 449 P.2d 123, 127 (1968)). Plaintiff does not provide evidence of an offer, acceptance of that offer, nor consideration, and furthermore does not assert that Defendant Penarosa (or any other City and County employee) had power to bind the City and County in contract. Plaintiff therefore does not establish that a contract existed, much less breach of contract.[34] The Court accordingly GRANTS Defendants' motion as to Plaintiff's breach of contract claim against both Defendant Penarosa and Defendant City and County.

#### B. *State Law Tort Claims*

##### 1. *Defendant Penarosa (State Law Qualified Immunity)*

 Defendant Penarosa asserts the defense of qualified immunity under Hawaii state law against Plaintiff's claims for conversion of property and trespass to chattels. Under Hawaii law, a non-judicial governmental official acting in the performance of a public duty enjoys the protection of immunity from liability from tortious conduct unless a plaintiff provides "clear and convincing proof that [the official] was motivated by malice and not by an otherwise proper purpose." *Medeiros v. Kondo,* 55 Haw. 499, 522 P.2d 1269, 1272 (1974); *Orso v. City & County of Honolulu,* 56 Haw. 241, 534 P.2d 489, 493 (1975);

---

**34.** Although Plaintiff does not raise the issue of estoppel against the government, the Court finds the doctrine inapplicable here, because under Hawaii law, "'estoppel may not be used in such a way as to hinder the state in the exercise of its sovereign power.' For example, the doctrine of estoppel will not be applied to preclude a state from enacting and enforcing police measures." *Turner v. Chandler,* 87 Hawai'i 330, 955 P.2d 1062, 1066 (1998) (citation omitted) (quoting *Kobayashi v. Zimring,* 566 P.2d 725, 730 (Haw.1977))

(citing *Godbold v. Manibog,* 36 Haw. 206, 214, 1942 WL 6569 at *4 (Hawai'i Terr. 1942)).

Moreover, as discussed *supra,* Plaintiff does not assert or bring forth any evidence that Defendant Penarosa had authority to make any agreements on behalf of the City and County, thus precluding Plaintiff from raising estoppel. *Godbold,* 36 Haw. at 214, 1942 WL 6569 at *4. ("'A state cannot be estopped by the unauthorized acts or representations of its officers.'" (quoting 19 Am.Jur. § 166, at 818))

*Marshall v. Univ. of Haw.,* 9 Haw.App. 21, 821 P.2d 937, 946 (1991); *see also Hoke v. Paul,* 65 Haw. 478, 653 P.2d 1155, 1160 (1982).

Although "[t]he existence or absence of malice is generally a question for the jury," *Runnels v. Okamoto,* 56 Haw. 1, 525 P.2d 1125, 1129 (1974), "when this issue has been removed from the case by uncontroverted affidavits and depositions, and the moving party is entitled to judgment as a matter of law, summary judgment will be granted." *Towse v. Hawaii,* 64 Haw. 624, 647 P.2d 696, 703 (1982); *Black v. City & County of Honolulu,* 112 F.Supp.2d 1041, 1049 (D.Haw.2000); *Pahk v. Hawaii,* 109 F.Supp.2d 1262, 1269 (D.Haw.2000). Moreover, a plaintiff must plead malice in his complaint. *See Towse,* 647 P.2d at 702 ("[I]t is essential that the injured party *allege* and prove, to the requisite degree, that the official had been motivated by malice and not by an otherwise proper purpose." (emphasis added)).

In the instant case, Plaintiff has not brought forth any evidence of malice or improper purpose. Defendant Penarosa's states in his declaration that he did not act with malice, an assertion that Plaintiff does not controvert. Plaintiff does not assert or plead malice in his complaint. Furthermore, Plaintiff conceded at the July 21, 2004 hearing that Defendant Penarosa was entitled to qualified immunity under state law. The Court accordingly GRANTS Defendants' motion for summary judgment as to Plaintiff's claims for conversion of property and trespass to chattels against Defendant Penarosa.

### 2. *Defendant City and County of Honolulu*

Defendant City and County asks the Court to dismiss Plaintiff's state law claims against it on the grounds that because Plaintiff's federal law claims fail, no federal jurisdiction exists for the Court to consider his state law claims. However, the Court does not dismiss all the federal claims, and therefore declines to dismiss the state law claims on jurisdictional grounds.

### *CONCLUSION*

For the foregoing reasons, the Court DENIES in part and GRANTS in part Defendants' motion for summary judgment.

The Court finds that H.R.S. §§ 290–8 and 290–9 are not facially unconstitutional except for condition (6) set forth in § 290–8, which allows for the immediate disposition, without notice, of derelict cars older than ten years and unconstitutionally violates the requirements of Due Process.

The Court DISMISSES Plaintiff's claims against Defendant Penarosa in his official capacity—these claims duplicate those raised against Defendant City and County.

The Court GRANTS Defendants' motion for summary judgment as to Plaintiff's federal law claims against Defendant City and County—mere enforcement of a state statute does not provide a sufficient basis to impose § 1983 liability on a municipality.

The Court DENIES Defendants' motion for summary judgment as to Plaintiff's federal law claims against Defendant Penarosa—genuine issues of material fact preclude the Court from granting qualified immunity to Defendant Penarosa as to Plaintiff's federal claims.

The Court GRANTS Defendant's motion for summary judgment as to Plaintiff's state law claim of breach of contract against Defendant City and County of Honolulu and Defendant Penarosa—Plaintiff does not allege or bring forth evidence of the essential elements of a contract.

The Court GRANTS Defendants' motion for summary judgment as to Plaintiff's state law tort claims against Defendant Penarosa (conversion of property and trespass to chattels)—Plaintiff does not plead or bring forth evidence of malice on the part of Defendant Penarosa, and furthermore conceded at the July 21, 2004 hearing that Defendant Penarosa is entitled to state law qualified immunity.

The Court DENIES Defendants' motion for summary judgment as to Plaintiff's state law tort claims against Defendant City and County—the Court does not dismiss all the federal claims, and therefore declines to dismiss the state law claims on jurisdictional grounds.

Accordingly, the following claims remain in this case:

(1) FEDERAL LAW CLAIMS AGAINST DEFENDANT PENAROSA (FOURTH AMENDMENT, FIFTH AMENDMENT, AND PROCEDURAL DUE PROCESS);

(2) State law tort claims against Defendant City and County of Honolulu (conversion of property and trespass to chattels).

IT IS SO ORDERED.