FLORIDA PAWNBROKERS AND SEC-
ONDHAND DEALERS ASSOCIATION,
INC., a Florida corporation; and Hap-
py Hocker Pawnshop, Inc., a Florida
corporation; Plaintiffs,

v.

CITY OF FORT LAUDERDALE,
FLORIDA, a Municipal
corporation, Defendant.

No. 87–7008–CIV–JAG.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

May 3, 1989.

Lindsey A. Payne, Asst. City Atty., Fort Lauderdale, Fla., for City of Fort Lauderdale.

Michael Winer, Fort Lauderdale, Fla., for plaintiff, Michael Winer, P.A.

ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the plaintiffs' motion for an award of attorney's fees pursuant to 42 U.S.C. § 1988 and costs. The defendant has filed two opposing memorandum, as allowed by this court's order dated February 20, 1989.

To recover attorney's fees under section 1988, the plaintiff must show that he is a "prevailing party". This is certainly not an issue in this case. The primary relief requested by the pawnbrokers and the relief actually granted by this court was a declaratory judgment that the applicable Florida statute was unconstitutional and an injunction preventing further enforcement of the statute.

■ The city raises two grounds why it is not liable for attorney's fees under section 1988. First, it contends that the state of Florida is the party who should pay the fees, not the city. The basis for this position is that this court, by prior order dated November 17, 1988, 699 F.Supp. 888, (S.D. Fla.) declared that section 715.041(2) of the Florida Statutes was unconstitutional on its face, not as applied by the city. The city concedes the fact that it was enforcing the statute, but alleges that mere enforcement is not sufficient for section 1988 liability since a municipality and its police force are required to enforce all state laws.

The city's position lacks merit. The city here did not merely enforce the state statute. As held in the prior order of this court, the city of Fort Lauderdale had a policy of using the statute as one part of a comprehensive plan for dealing with the potential of the pawnbroking business as a market for stolen property. The city's ordinance, No. C–87–17, stated that, "the City also desires to facilitate the recovery of stolen property for return to the victims of burglaries and theft." *See* Fort Lauderdale, Florida, Code of Ordinances no. C–87–17, at 1 (March 3, 1987). Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–91, 98 S.Ct.

2018, 2035–36, 56 L.Ed.2d 611 (1978), the Supreme Court held that local governing bodies are liable under section 1983 when they implement or execute an ordinance which is officially adopted and promulgated by that local body's officers. Hence, the city is liable because they enforced the statute pursuant to their ordinance in addition to any duty they had to follow state law.

■ Furthermore, the mere enforcement of an unconstitutional ordinance or statute is an adequate basis to award costs under section 1988. This is certainly true where, as here, the city is the party who defended the suit and lost. The city notes an inability to find supporting authority for its position. *See* Response to Plaintiffs' Motion for Attorney's Fees and Costs filed by Defendant at 2. The reason for the paucity of caselaw is that mere enforcement is commonly accepted as a basis for section 1988 liability. *See e.g. Holy Spirit Ass'n, Etc. v. Peterson*, 489 F.Supp. 428 (N.D.Ill.1979) (§ 1988 award validly assessed against city even though neither culpable official nor governmental unit which enacted the unconstitutional statute was ever a party to the case). The Supreme Court has stated that "Fee awards against enforcement officials [under 42 U.S.C. § 1988] are run-of-the-mill occurences." *Supreme Court of Virginia v. Consumers Union, Etc.*, 446 U.S. 719, 739, 100 S.Ct. 1967, 1978, 64 L.Ed. 2d 641 (1980); *Fernandes v. Limmer*, 663 F.2d 619, 637 (5th Cir. Unit A 1981) (citing *Consumers Union* to refute argument of local airport board that enforcement in not grounds for § 1988 award), reh'g and reh'g en banc denied, 669 F.2d 729 (Former 5th Cir.1982).

A case on point is *Venuti v. Riordan*, 702 F.2d 6 (1st Cir.1983). There, a bar owner sued the city's Licensing Commission and police chief, in his official capacity, challenging a Massachusetts statute requiring the licensing of bars and restaurants in certain situations. The city made the same argument advanced by the defendant here; namely, that the state should

pay the § 1988 fee award. In summarizing the city's position, the *Venuti* court noted, "The argument, as stated, rests upon the fact that the statute set aside was a state statute, not a city ordinance; and its unconstitutional flaw consisted of the way the statute was written, not the way it was applied." 702 F.2d at 7. The court rejected the argument stating that, "civil rights action costs (including attorney's fees) are often assessed against defendants who enforce the laws instead of those who enact them." 702 F.2d at 8.

The city of Fort Lauderdale attempts to distinguish the *Venuti* case with the same reasoning used to support its second reason why the city should not be liable under section 1988. It argues that because the city is not a branch of the state government even though it has to enforce state laws, this should constitute a "special circumstance" making a § 1988 award unjust. The basis for this position is the statement of the First Circuit in *Venuti* that, "cities are legal insturments of the state." The city of Fort Lauderdale argues that such is not the case in Florida, apparently unlike Massachusetts.

■■■ It is true that counties and municipalities vary under Florida law. A county is a political sub-division of the state. *See* FLA. CONST. Art. VIII, § 1(a). On the other hand, a city's existence derives from the state through its legislature. *See Cleary v. Dade County*, 160 Fla. 892, 37 So.2d 248 (1948). Moreover, although not a political branch of the state government's machinery, a city is also a branch of state government in that it exercises state power. *See Miami v. Lewis*, 104 So.2d 70 (Fla. 3rd DCA 1958) (per curiam), reh'g denied (July 25, 1988). Therefore, in at least the sense that Florida municipalities enforce state laws, the ambiguous statement in *Venuti* that "cities are legal insturments of the state" is true in Florida.

■■■ As noted above, the city also argues that Florida's government structure should constitute a "special circumstance" for pur-poses of § 1988 liability. There is a recognized "special circumstances" exception to § 1988 awards where such an assessment would be "unjust". *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). However, the city does not fit within this exception. It chose to defend this case. While it is correct that the city was required to enforce state law, there is no evidence that the city had to defend this suit. If the only ground claimed by the plaintiff was the facial unconstitutionality of a state statute and the relief sought was declaratory and injunctive in nature, then the city could decline to defend, without undue harm to itself. This litigation posture may have forced the real party in interest, the state, to intervene and incur the defense costs that the city was forced to bear.

The city could have also moved to join the state as either a proper or necessary party. However, it chose not to do so.

Aside from the fact that the city did not have to incur these costs, there is no clear reason articulated by the defendant why the city should not be liable for the plaintiffs' attorney's fees. As the First Circuit stated in *Venuti*, "The facts that the city did not itself enact the law at issue and some other entity may be more 'culpable' or 'casually responsible' than the city do not, in our view, make it 'unjust' as a matter of law to assess these [§ 1988] costs." 702 F.2d at 8.

The plaintiffs' motion requests an award of costs for filing fees, service of process, and copying costs in the total sum of $238.20. The city objects to the $79.20 in copying expenses as lacking in specificity without any showing of necessity. However, the plaintiff does state there were 456 pages copied at rates of 10¢ and 25¢. This is certainly reasonable and satisfies 28 U.S. C. § 1920(4).

■■■ In calculating an award of attorney's fees, the computation is more complex. The first step is to examine the time and labor required and the customary fee

to determine an initial figure. The plaintiffs have requested compensation for 76 hours at an hourly rate of between $150 to $200 per hour. Michael Winer represented the plaintiffs and alleges ten years of experience, as an attorney. Further, he has submitted a copy of his handwritten log documenting his time expenditures, dates, and work completed. He has also submitted two affidavits from local counsel stating that the customary rate is $175 per hour for this type of case.

The request for 76 hours of work is documented, reasonable, and shall be allowed. However, the court finds that the customary rate is $125 per hour for this type of litigation considering the experience of plaintiffs' counsel.

The second step in the fee calculation is to consider the factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *See Fitzpatrick v. Internal Revenue Service*, 665 F.2d 327, 331–32 (11th Cir.1982); *cf. Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1298–1304 (11th Cir.1988).

The first additional factor is the novelty and difficulty of the questions presented. This case did involve a novel issue. As apparent from this court's previous order invalidating the state statute, there are only three cases relevant to the issues presented with none directly on point. The court finds that this factor requires a ten percent fee enhancement.

The second and third factors are the experience, reputation, and ability of the attorney; and the skill required to perform the legal services properly. The plaintiffs' attorney point out that he has been practicing for ten years after working with the late Marion Sibley, Esquire. He also alleges that he attended a seminar on the prosecution of § 1983 claims, has pursued continuing legal education on the topic, and has tried § 1983 cases on both sides with significant success in three cases. Unfortunately, the quality of the legal memorandum submitted were average, the oral argument was unhelpful, and the writing, research, and analysis did not exhibit expertness in this area. It should be noted that the court's eventual decision required considerable, independent research and analysis that did not appear in plaintiffs' submissions. Hence, the fee shall not be changed upon consideration of these matters.

The fourth factor is whether the fee is at a fixed rate or is contingent. The plaintiffs' attorney contracted for a $10,000 retainer which was not refundable if he lost the case. If this court's award exceeds the retainer, the plaintiffs get their retainer refunded and the attorney keeps the award. The plaintiff took no risk by taking this case. There should be no enhancement or reduction to the initial figure.

The fifth consideration is the amount involved in the case and the results obtained. Plaintiffs' attorney claims that he enforced the rights to due process of over 300 member pawnbrokers and numerous non-member brokers and dealers statewide. In terms of this case, the value of the goods seized pursuant to the statute prior to this court's decision were not substantial, as demonstrated by the plaintiffs failure to pursue any claim for damages. However, because the court's opinion does protect all state pawnbrokers and does aid such dealers nationwide, the court finds that the initial fee figure should be enhanced by five percent.

The sixth factor is the undesirability of the case and the preclusion of other employment due to acceptance of this representation. The plaintiffs point out that pawnbrokers are not publicly applauded. However, as noted by the defendant, the plaintiffs' attorney cannot credibly claim a loss of future profits from "more conservative clients" since he has represented bars and racetracks in his other § 1983 cases. Hence, no change to the fee is justified.

The seventh consideration is the nature and length of the professional relationship with the client. Plaintiffs' attorney has represented the pawnbroker's association

for approximately two years. This factor carrys no weight in this case.

The eighth factor is the awards in similar cases. The plaintiffs rely upon a 1985 opinion by the Honorable Judge Eugene Spellman which awarded a fee of $135 per hour on a § 1988 claim. This case was four years ago and the plaintiffs do not suggest that the case was otherwise similar to the litigation here.

The court has also considered the cited opinion by the Honorable Judge James Kehoe which involved a fee award of $12,825 for the invalidation of a Fort Lauderdale pawnbroker ordinance. While this case is relevant, the court finds that this factor does not require any enhancement.

Finally, the court must consider the time limitations imposed on the attorney by the client and/or the case. The plaintiffs' attorney has presented no evidence that this factor had any bearing on the prosecution of this cause and the court also so finds.

Having considered the above matters, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that the plaintiffs' motion for an award of costs and attorney's fees is GRANTED. The plaintiffs' request for costs in the sum of $238.20 shall be ALLOWED. The plaintiffs' request for attorney's fees is ALLOWED as follows: The plaintiffs shall be allowed a fee of $9,500 subject to a 15% enhancement for a total fee award pursuant to 42 U.S.C. § 1988 of $10,925.00.

DONE AND ORDERED.