Nancy M. VALENCIA, Plaintiff,

v.

The AFFILIATED GROUP, INC., Defendant.

Case No. 07–61381–CIV.

United States District Court, S.D. Florida.

Sept. 21, 2009.

Donald A. Yarbrough, Fort Lauderdale, FL, for Plaintiff.

David Palmer Hartnett, Barbara Fernandez, Hinshaw & Culbertson, LLP, Miami, FL, for Defendant.

*JUDGMENT ON PLAINTIFF'S VERI-FIED MOTION FOR AWARD OF COSTS AND ATTORNEY'S FEES*

KENNETH A. MARRA, District Judge.

This cause is before the Court upon the Report and Recommendation of the Magistrate Judge, filed October 21, 2009 (DE 67). The Court has reviewed the record *de novo,* considering the Plaintiff's Verified Motion for an Award of Costs and Attorney's Fees (DE 37), the Defendant's Response in Opposition to Plaintiff's Motion (DE 44), the Report and Recommendation of the Magistrate Judge, and the entire file. Noting that no timely objections have been filed, for the reasons stated in the Report and Recommendation and upon independent review, it is **ORDERED AND ADJUDGED** as follows:

1. The Magistrate Judge's Report and Recommendation (DE 67) is hereby **ADOPTED;**

2. Plaintiff's Verified Motion for an Award of Costs and Attorney's Fees (DE 37) is **GRANTED IN PART** and **DENIED IN PART;** and

3. Plaintiff is hereby awarded attorney's fees in the amount of $2,640 and costs in the amount of $380, for a total award of $3,020, which shall bear post-judgment interest at the rate of 0.40%, for which let execution issue.

*REPORT AND RECOMMENDATION*

LINNEA R. JOHNSON, United States Magistrate Judge.

**THIS CAUSE** is before the Court Plaintiff's Verified Motion for Award of Costs and Attorney's Fees (D.E. # 37). The matter was referred to the undersigned United States Magistrate Judge by the Honorable Kenneth M. Marra, United States District Judge for the Southern District of Florida, and is now ripe for judicial review. For the following reasons the undersigned respectfully recommends

that said motion be granted in part and denied in part as follows. If the within Report and Recommendation is adopted, Plaintiff should be awarded $2,640 in attorney's fees and $380 in costs, for a combined total attorney's fee and cost award of $3,020.

**I. BACKGROUND**

Plaintiff, Nancy Valencia ("Valencia" or "Plaintiff"), filed the subject action against Defendant, The Affiliated Group, Inc. ("Affiliated" or "Defendant"), on September 27, 2007, pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Less than two months later, on November 30, 2007, Defendant served Plaintiff with an Offer of Judgment (the "Offer") pursuant to Fed.R.Civ.P. 68. Under the Offer, Defendant agreed to pay Plaintiff damages in the amount of $1,001, one dollar more than the maximum recovery to which Plaintiff was entitled under the statute, plus reasonable attorney's fees and costs to be determined by the Court. Plaintiff did not accept the Offer.

Thereafter, the case proceeded apace with no discovery undertaken and no substantive pleadings filed until July 18, 2008, when Defendant filed its Motion for Summary Judgment and Alternative Motion to Dismiss (D.E. # 10). By this time ten months had passed since the date of Defendant's Offer of Judgment, which offered Plaintiff the maximum statutory damages to which she was entitled. Rather than accepting the Offer, Plaintiff filed two motions for enlargement of time to respond to Defendant's Motion for Summary Judgment and Alternative Motion to Dismiss, an untimely Cross–Motion for Summary Judgment, and a Motion for Extension of Time to Hear Plaintiffs Motion for Summary Judgment.

On September 24, 2008, 2008 WL 4372895, the District Court entered an

Omnibus Order which, among other things, granted in part and denied in part Defendant's Motion for Summary Judgment, holding that equitable relief is precluded in private FDCPA actions. Shortly thereafter, on October 7, 2008, the parties entered into a Stipulation as to Liability and Statutory Damages (D.E. # 33). In the Stipulation, entered into "In light of the Court's recent September 24, 2008 Omnibus Order and Opinion," Defendant stipulated as to liability and agreed to pay statutory damages in the amount of $1,000, and attorney's fees in an amount to be determined by the Court. *Id.* Notably, Plaintiff ended up accepting one dollar less than the amount Defendant offered ten months earlier in the November 30, 2007, Offer of Judgment. The Stipulation was approved by the District Court on the same date (D.E. # 34). The instant Motion for Attorney's Fees followed (D.E. # 37).

## II. LEGAL ANALYSIS

By the instant Motion, Plaintiff moves, pursuant to 15 U.S.C. § 1692k(a)(3), for an award of attorney's fees in the amount of $8,078, and costs in the amount of $480, for a total attorney's fee and cost award of $8,558. In support of her request, Plaintiff submits the Declaration of Scott D. Owens ("Owens Dec."), a South Florida attorney whose practice focuses primarily on consumer debt collection cases, and the Declaration of Plaintiff's attorney, Donald Yarbrough ("Yarbrough Dec."). Both Mr. Owens and Mr. Yarbrough opine that the reasonable hourly rate in the relevant community for an attorney of Mr. Yarbrough's experience is $350 per hour, and that the 23.08 hours incurred in representing Plaintiff in this action was reasonable and necessary under the circumstances.

Defendant concedes Plaintiff's entitlement to attorney's fees and costs, but argues the amount sought is unreasonable and not properly recoverable. Plaintiff, instead of filing a reply in support of her

Motion, has elected instead to file a Notice of Supplemental Authority (D.E. # 66). In the Notice, Plaintiff directs the Court's attention to the cases of *Monica A. Harmon v. Retrieval Masters Creditors Bureau, Inc.*, Case No. 07–80777–CIV–MIDDLEBROOKS/JOHNSON and *S. James Wallace v. Collection Information Bureau, Inc.*, Case No. 07–80941–CIV–HURLEY/HOPKINS, both of which address the issue of attorney's fees in the context of a Rule 68 offer of judgment and the Fair Debt Collection Practices Act.

### A. ATTORNEY'S FEES

In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court reaffirmed the traditional "American rule" regarding attorney's fees: that a prevailing party may not ordinarily recover attorney's fees in the absence of a statute or enforceable contract providing for a fee award. In this instance Plaintiff relies on statutory support to justify her attorney's fees request.

■ Congress has made specific and explicit provisions for the allowance of attorney's fees under selected statutes granting or protecting various federal rights. *Id.* at 260, 95 S.Ct. 1612. The Fair Debt Collection Practices Act is one such statute, and directs courts to award reasonable attorney's fees and costs to prevailing plaintiffs. 15 U.S.C. § 1692k(a)(3). The Act provides that in addition to damages, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person [for damages] ... (3) [and] in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court...." *Id.* The awarding of such fees to prevailing FDCPA plaintiffs is mandatory. *In re Martinez*, 266 B.R.

523, 537 (Bankr.S.D.Fla.), *aff'd,* 271 B.R. 696 (S.D.Fla.2001)(noting that attorney's fees under the FDCPA should not be construed as a special or discretionary remedy, " 'rather the [FDCPA] *mandates* an award of attorney's fees as a means of fulfilling Congress' intent that the [FDCPA] should be enforced by debtors acting as private attorneys general.' ")(emphasis in original)(*quoting Graziano v. Harrison,* 950 F.2d 107, 113 (3d Cir.1991)). *Accord Emanuel v. American Credit Exchange,* 870 F.2d 805, 809 (2d Cir.1989); *Edwards v. National Business Factors, Inc.,* 897 F.Supp. 458, 459 (D.Nev.1995).

■ The purpose behind the prevailing party attorney's fee provision is to encourage competent attorneys to work on cases that might otherwise be avoided. *See Thorpe v. Collection Information Bureau, Inc.,* 963 F.Supp. 1172, 1174 n. 2 (S.D.Fla. 1996). The determination of what constitutes a reasonable fee is left to the sound discretion of the district court and will not be reversed absent abuse of discretion. *See Davis v. Fletcher,* 598 F.2d 469, 470 (5th Cir.1979).[1]

Defendant does not dispute that Plaintiff is a prevailing party under the FDCPA and presumptively entitled to fees. Defendant does, however, take issue with the amount of fees requested on several grounds. First, Defendant contends that Rule 68 precludes Plaintiff from recovering any attorney's fees incurred after the date of the November 30, 2007 Offer of Judgment. Next, Defendant takes issue with the hourly rate sought, claiming $350 per hour is "unreasonable" and "not customary" in the relevant community for the type of action involved. Finally, Defendant points to enumerated instances of excessive billing practices and the limited success Plaintiff achieved and, on this ba-

sis, asks the Court to employ either an hour-by-hour analysis or an across-the-board cut to reduce the amount of lodestar hours claimed. Each of these arguments shall be addressed in turn.

### 1. The Effect Of Rule 68 On The Attorney's Fee Calculation

■ Defendant argues that Rule 68 precludes Plaintiff from recovering any attorney's fees incurred after the date of the November 30, 2007 Offer of Judgment. The Court disagrees, concluding that in the instant case, where the FDCPA's attorney's fee provision explicitly distinguishes attorney's fees from awardable "costs," Rule 68 does not preclude Plaintiff from recovering attorney's fees incurred after the date of the Offer.

Rule 68 provides, in relevant part, as follows:

**(d) Paying Costs After an Unaccepted Offer.** If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed.R.Civ.P. 68(d)(2009). The primary purpose of the Rule is to encourage settlement and avoid litigation. *See* Rule 68, Advisory Committee Notes, 1946 amendments; *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981). Where the Rule operates, the award is mandatory. *See Jordan v. Time, Inc.,* 111 F.3d 102, 105 (11th Cir.1997)("We believe the mandatory language of the rule leaves no room for district court discretion.").

In support of its position that Rule 68 operates to preclude Plaintiff from recovering attorney's fees incurred after the Offer of Judgment, Defendant cites to various cases, most of which are not binding

---

**1.** The Eleventh Circuit in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

on this Court, and none of which are truly on point. The Supreme Court case cited by Defendant, *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), rather than providing support for Defendant's position, actually supports Plaintiff's position.

In *Marek*, the Supreme Court held that the term "costs" in Rule 68 includes attorney's fees awardable under 42 U.S.C. § 1988, which authorizes the district court to "allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); *Marek*, 473 U.S. at 9, 105 S.Ct. 3012. The Court observed that notwithstanding the "American Rule," which provides that absent exceptional circumstances each litigant bears responsibility for its own attorney's fees, "[b]y the time [Rule 68] [was] adopted ..., federal statutes had authorized and defined awards of costs [to include attorney's fees]." *Id.* at 7–8, 105 S.Ct. 3012. According to the Court, "the most reasonable inference," is that by not defining the term "costs," the drafters of Rule 68 likely "intended to refer to all costs properly awardable under the relevant substantive statute or other authority." *Id.* at 9, 105 S.Ct. 3012. On this basis, the Court held that "absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, ... such fees are to be included as costs for purposes of Rule 68." *Id.* (citations omitted).

Thus, *Marek* instructs courts to scrutinize the underlying statute upon which the recovery of attorney's fees is based to determine whether Rule 68's cost-shifting provision is triggered in a particular case. Only where it is clear from the underlying statute that attorney's fees are encompassed within costs, is Rule 68 triggered. *Marek*, 473 U.S. at 9, 105 S.Ct. 3012 ("[W]here the underlying statute defines 'costs' to include attorney's fees, ... such fees are to be included as costs for purposes of Rule 68."). Accordingly, "[e]ach and every statute cited in *Marek* as including attorneys' fees within the definition of allowable costs features either the words 'as part of the costs' or similar indicia that attorneys' fees are encompassed within costs." *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1334 (11th Cir.2002)(applying the reasoning of *Marek* to action under the Real Estate Settlement Procedures Act and the Rule governing bond for costs on appeal).

The FDCPA's attorney's fee provision at issue herein stands in sharp contrast to § 1988's attorney's fee provision at issue in *Marek* and the other fee provisions identified by the Court in that case. The FDCPA provides for recovery of "the costs of the action, *together with* a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3) (emphasis added). "Simply stated, the words 'together with' are substantively and critically different from the phrase 'as part of.' Whereas the latter phrase plainly encompasses attorneys' fees *within* the universe of awardable costs, the former connotes that costs and fees are distinct entities that are commonly awardable." *Pedraza*, 313 F.3d at 1334; *see also Harmon v. Retrieval Masters Creditors Bureau, Inc.*, 07–80777–CIV–MIDDLEBROOKS (holding that Rule 68's cost-shifting was not triggered where the judgment ultimately obtained in a FDCPA case was the same as the offer, and noting in dicta that the underlying statute in *Marek*, 42 U.S.C. § 1988, which "defined costs to include attorney's fees," was distinct from the underlying statute at issue there, the FDCPA, which "do[es] not define costs to include attorney's fees.").

The other case primarily relied upon by Defendant, *Sampaio v. Client Services, Inc.*, 306 Fed.Appx. 496 (11th Cir.2009), likewise fails to offer Defendant any support. *Sampaio* is a one-page *per curiam*

affirmance of the district court's order of dismissal following a defendant's offer of judgment for $1,001, plus attorney's fees and costs, which was the maximum amount to which Plaintiff was entitled. On appeal, Plaintiff argued the district court's order might be considered an acceptance by plaintiff of defendant's offer of judgment, and since the offer was defective, in both substance (offer purported to include a release of unknown parties) and manner of delivery (faxed rather than mailed), the judgment itself should be overturned.

The Eleventh Circuit affirmed the district court's decision, holding simply that Plaintiff's argument concerning alleged defects in the offer of judgment were moot, in that the Court did "not construe the district court's dismissal of the case as encompassing any order that [defendant's] offer of judgment was deemed accepted." *Id.* Instead, the Court construed "the district court's judgment as acknowledging that [defendant] had agreed to pay [plaintiff] $1,001 plus [plaintiff's] reasonable attorney's fees and costs up to the date of the offer of judgment, that same was the maximum recovery to which [plaintiff] was entitled, and that there was no longer a live case or controversy." *Id.*

Defendant does not deign to explain why, exactly, *Sampaio* is supportive of its position. The power of courts to handle their caseloads and effectively manage their cases is a necessary and integral part of the independence of the judiciary and is absolutely essential to the performance of the duties imposed on them by law. In the case of *Sampaio,* the district court, upon learning that Plaintiff had been offered the maximum award to which he was entitled, noted that the interests of justice

would best be served by immediate dismissal. In view of the fact the offer was for the maximum amount to which Plaintiff was entitled, there was no longer a live case or controversy. *Id.* As such, immediate dismissal of the case can be seen as the district court's prerogative. The Eleventh Circuit's decision affirming the district court's order does not, as Defendant seems to suggest, mean that in all instances where there is an offer for the maximum amount to which a party is entitled, the district court has no choice but to dismiss the case and "cut off future entitlement to attorney's fees." Deft's Resp., p. 6.

In summary, the Court finds that a plain reading of Rule 68 and FDCPA's attorney's fee provision, combined with close scrutiny of the reasoning underpinning the Supreme Court's decision in *Marek* and the cases that followed, compel the result reached here, namely, that in the instant case, where the FDCPA's attorney's fee provision explicitly distinguishes attorney's fees from awardable "costs," Rule 68's cost-shifting mechanism is not triggered, and Plaintiff is not precluded from recovering attorney's fees incurred after the date of the offer.

### 2. The Amount Of Attorney's Fees To Which Plaintiff Is Entitled

The starting point in any "reasonable fee" determination is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (cited in *Rogers v. City of Virginia Beach,* 182 F.3d 909 (4th Cir.1999)) (FLSA case)[2]. There is a "strong presumption" that the resulting figure, known as the "lodestar," is the reasonable sum the attorneys deserve.

---

**2.** Although *Hensley* involved an attorney's fee award under 42 U.S.C. § 1988, its reasoning applies equally to attorney's fees under other statutes such as the FDCPA at issue herein. As noted by the Supreme Court in *Hensley*

"[t]he standards set forth in this opinion are generally applicable to all cases in which Congress has authorized an award of fees to a 'prevailing party'." *id.* at 433 n. 7, 103 S.Ct. 1933

*Bivins v. Wrap It Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir.2008). Once the court arrives at an appropriate lodestar, the figure may thereafter be enhanced or reduced based on the results obtained or the risk of non-payment. *Pennsylvania v. Delaware Valley Citizens' Council II ("Delaware II"),* 483 U.S. 711, 745, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *Pennsylvania v. Delaware Valley Citizens' Council I ("Delaware I"),* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

▇▇ Enhancement Is precluded, however, in instances such as this one involving a federal fee shifting statute. *McKenzie v. Cooper, Levins & Pastko, Inc.,* 990 F.2d 1183, 1186 (11th Cir.1993). Meanwhile, "a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts." *Bivins,* 548 F.3d at 1350–51 (*citing Resolution Trust Corp. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1150 (11th Cir.1993)). Partial success, in turn, is to be determined by the court on a case-by-case basis. *Id.* at 1351, n. 3. This said, the law is well established that the fee applicant's failure to, prevail on every contention raised in the lawsuit is not a justification for reduction of the fee award. *Lattimore v. Oman. Const.,* 868 F.2d 437, 440 (11th Cir.1989). Unless the fee applicant obtained only limited success, where the successful and unsuccessful claims involved related legal theories, no fees should be deducted. *Hensley,* 461 U.S. at 424, 103 S.Ct. 1933; *Avila v. Coca–Cola Co.,* 849 F.2d 511, 514 (11th Cir.1988); *Popham v. City of Kennesaw,* 820 F.2d 1570, 1579 (11th Cir.1987).

The first step in determining the appropriate lodestar, is to fix upon a reasonable hourly rate. In determining a reasonable hourly rate, the burden is on the moving party to establish the prevailing market rate, which is the rate charged in the community by lawyers of reasonably comparable skill, experience and reputation for similar services. *Blum v. Stenson,* 465 U.S. 886, 895 and 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th cir. 1987); *Gaines v. Dougherty Co. Bd. of Education,* 775 F.2d 1565, 1571 (11th Cir. 1985). "The decision regarding the appropriate hourly rate may be made either by analyzing the affidavits submitted by counsel or, if this documentation is insufficient, by relying upon the court's expertise." *Avirgan v. Hull,* 705 F.Supp. 1544, 1549 (S.D.Fla.1989) (J. King) (citing *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir.1988)). Satisfactory evidence of the market rate requires more than the mere affidavit of the attorney performing the work. *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541. Also insufficient is testimony that a given fee is reasonable; evidence must be of rates actually billed and paid. *Hensley,* 461 U.S. at 439 n. 15, 103 S.Ct. 1933. Such evidence may be adduced from charges of lawyers under similar circumstances or by opinion evidence. *Norman,* 836 F.2d at 1299.

When analyzing the market rates being attested to, the district court may wish to consider any of the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[3] *Delaware Valley I,* 478 U.S. at 564–569,

---

**3.** The 12 factors enumerated in Johnson are as follows: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship

106 S.Ct. 3088. One of those factors, the hourly rate normally charged by the applicant's counsel, has been deemed the logical starting place in any rate determination. *Vaughns v. Board of Education,* 598 F.Supp. 1262 (D.Md.1984), *aff'd,* 770 F.2d 1244 (4th Cir.1985); *Zeffiro v. First Pennsylvania Bank, N.A.,* 574 F.Supp. 443, 447 (E.D.Pa.1983), *aff'd without opinion,* 746 F.2d 1469 (3d Cir.1984) *see also Florida Pawnbrokers v. Fort Lauderdale,* 711 F.Supp. 1084, 1086–87 (S.D.Fla.1989). Also considered probative are the rates billed in similar lawsuits and the relative skill of the attorneys involved. *Norman,* 836 F.2d at 1299.

■ The Court begins with a determination of the reasonable hourly rate. The Court agrees with Defendant that the $350 hourly rate sought by Plaintiff's attorney is unreasonable and not customary in this community for lawyers of reasonably comparable skill, experience and reputation for similar services. *Blum,* 465 U.S. at 895 and 896 n. 11, 104 S.Ct. 1541. Plaintiff's counsel is seeking an hourly rate of $350 in this case, even though he candidly admits he has only been awarded $300 per hour for similar FDCPA cases in the past. *See* Yarbrough Dec., p. 4, attached as Exhibit in Support of Plaintiff's Mtn. (D.E. # 39). His claimed justification for the increase in fees is the increase in his "level of experience over the years." Plaintiff's Mtn., p. 6. According to Plaintiff, despite the fact that little less than a year ago numerous courts in this district deemed $300 to be a reasonable hourly rate for Plaintiff's attorney, now that he "is entering his tenth year of practice," and considering that "[t]he effects of the current economic crisis in the United States has caused an increase in the rate of defaults in litigation against debt collectors," he claims a rea-

sonable rate for his services is $350 per hour, which is the rate Plaintiff's counsel contends is needed "in order to permit counsel to accept cases under the FDCPA and to vigorously pursue them." *Id.* at 5.

However, as Defendant correctly observes, this was not by any means a complicated case, and with Plaintiff's counsel's practice devoted almost entirely to the prosecution of FDCPA cases, Plaintiff's counsel has litigated this very FDCPA issue numerous times. Given the routine nature of the case, and counsel's experience in dealing with precisely the issues raised here, the Court finds $350 per hour to be unreasonable. *See Turner v. Mama Mia I, Inc.,* 2008 WL 4186977 (S.D.Fla. Sept. 8, 2008)(court denied plaintiffs requested $300 hourly rate for professional FACTA attorney, noting "given the complexity of the case, the routine nature by which Plaintiff's counsel engages in this practice, and the lack of information supporting a higher fee, the court finds that a fee of $150.00 per hour more than adequately represents a fair and accurate lodestar for Plaintiff's counsel."). Instead, relying upon the "court's expertise," *Avirgan v. Hull,* 705 F.Supp. 1544, 1549 (S.D.Fla.1989) (J. King) (citing *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir.1988)), the Court finds $300 per hour to be a reasonable hourly rate for Plaintiffs counsel, and fully in line with the rates charged in the South Florida community by attorneys with similar skill, experience and reputation for similar services.

The next step in the computation of the lodestar is to determine the amount of reasonable hours. On this point Defendant argues that many of the hours claimed are excessive, redundant, unnecessary or otherwise not recoverable as time

with the client; and (12) awards in similar cases. *See Johnson,* 488 F.2d at 717–719. These factors were taken from the American

Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106 (1980).

spent on unsuccessful claims. "Excessive, redundant, or otherwise unnecessary" hours should be excluded from the amount claimed. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. These excluded hours are those which are unreasonable to bill to a client "irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301. Generalized statements that the time spent was reasonable or unreasonable, are not particularly helpful and are entitled to little weight. *Hensley*, 461 U.S. at 439, 103 S.Ct. 1933. Rather, the burden is on the moving party to specify the hours worked with particularity as to specifically enumerated tasks. *Norman*, 836 F.2d at 1303 ("The general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."). Furthermore, just "as the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should the objections and proof from fee opponents." *Norman*, 836 F.2d at 1301.

"When a district court finds the number of hours claimed Is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (*citing Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir.1994)); *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1220 (11th Cir.

2008) ("where the billing records are voluminous ... a district court may make a reasonable across the board reduction in hours instead of engaging in the pick and shovel work necessary to make a more precise determination."). In determining what number of compensable hours is "reasonable," the court is directed to consider the same 12 *Johnson* factors mentioned previously with respect to determining a "reasonable" hourly rate.[4] The *Johnson* factors only come into play for purposes of the lodestar calculation; "they should not be reconsidered in making either an upward or downward adjustments the lodestar—doing so amounts to double-counting." *Bivins*, 548 F.3d at 1352 (*citing City of Burlington v. Dague*, 505 U.S. 557, 562–563, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).

■ Plaintiff seeks to recover fees for 23.8 hours allegedly expended in the case. Defendant seeks a particularized reduction in the amount of hours awarded on the basis of certain enumerated instances of what Defendant refers to as excessive billing practices.[5] Believing the Court would award Plaintiff fees only for work performed prior to the Offer of Judgment, Defendant has limited his billing entry objections to the period of time pre-dating the Offer.[5] Alternatively, Defendant seeks an across-the-board reduction in the amount of hours awarded due to the limited success Plaintiff obtained.[6] For the

---

4. *Johnson*, 488 F.2d 714,. For a list of the 12 enumerated factors see footnote 3, pp. 1307–08 , *supra*.

5. The specific objections raised are as follows: (1) September 26, 2007, "Legal research regarding injunction and declaration" / .25 (487.50); (2) September 26, 2007, Draft Complaint/ .75 ($262.50); (3) October 20, 2007, "Review caselaw stated in Answer regarding declaratory relief" / .50 ($175); (4) November 9, 2007, "Prepare proposed Joint Scheduling Report" / .75 ($262.50).

6. While the hourly reduction sought in Defendant's Response Brief is not quite phrased in the alternative, the court notes that in reducing the hours awarded it is limited to one methodology: either an hour-by-hour approach or an across-the-board reduction. *Bivins*, 548 F.3d at 1350 (*citing Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir.1994)); *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1220 (11th Cir.2008) ("where the billing records are voluminous ... a district court may make a reasonable across the board reduction in hours instead of engaging

reasons that follow, the Court agrees with Defendant that the amount of hours claimed should be reduced in light of the limited success Plaintiff obtained, and in doing so has elected to employ the across-the-board reduction method utilized in *Loranger*, 10 F.3d at 783. The term "limited success" can be defined in various ways depending upon the circumstances. Here, to understand the limited success Plaintiff achieved, one has to measure the maximum $1,000 damage award Plaintiff obtained on the one hand, against the seemingly pointless waste of time and energy Plaintiff's attorney expended in attempting to obtain additional relief unmistakably precluded by case law, only to end up with one dollar less than Plaintiff had been offered at the very beginning of the case, ten months earlier. Early on in the case, Defendant presented Plaintiff with an Offer of Judgment offering to pay the maximum amount of statutory damages to which Plaintiff was entitled plus one dollar ($1,001), as well as reasonable attorney's fees and costs to be determined by the Court. Although Defendant had offered everything to which Plaintiff was entitled, Plaintiff continued to delay the case and incur fees for a full ten months by filing various pleadings, and tenaciously clinging to an unsupportable position, namely, that she was entitled to equitable relief, despite clear and unmistakable case law to the contrary. It was not until the District Court entered its Order granting in part and denying in part Defendant's Motion for Summary Judgment and, relying on *Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830, 834 (11th Cir.1982), held that equitable relief is precluded in private FDCPA actions, that Plaintiff finally agreed to accept Defendant's Offer.

The Court recognizes the important purpose the FDCPA serves of attempting to remedy the widespread and serious national problem of collection practice abuse and that enforcement of this important legislation relies, in large part, on the prevailing party attorney's fee provision contained therein, which encourages competent attorneys to work on cases that might otherwise be avoided. Nonetheless, the Court must not be blind to the reality that legislation such as this breeds a class of professional plaintiffs who under the guise of protecting rights covered under the act and redressing their injuries, seek to earn a profit by needlessly prolonging litigation to recover enhanced attorney's fee awards. As the Supreme Court has aptly noted, "[t]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. State of Ind.*, 338 U.S. 49, 52, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949). Simply put, the limited success Plaintiff obtained in this case is evident in Plaintiff's implausible rejection of an Offer, made early on in the case prior to any significant events or discovery taking place, which offered Plaintiff the maximum amount of statutory damages available, plus reasonable attorney's fees and costs incurred up to that time to be determined by the Court.

Other *Johnson* factors justifying an across-the-board reduction include the fact there was nothing novel about Plaintiff's claims or the legal questions presented, nothing unique about the matter that required the skills of a lawyer at Plaintiff's counsel's level of experience to perform the legal services properly, and no evidence that Plaintiff's counsel was precluded from other employment due to acceptance of the case, or that there was any time limitation imposed by the client or the circumstances. Add to this the fact that FDCPA plaintiffs like Valencia should not be rewarded for holding out for additional attorney's fees after refusing a settlement

---

in the pick and shovel work necessary to

make a more precise determination.")

demand offering the maximum amount of statutory damages awardable, as well as attorney's fees and costs, and an across-the-board reduction is not only justified, but in order to satisfy the interests of justice, mandated.

In this case Plaintiff to recover fees for 23.08 hours of work allegedly expended. For all the reasons stated above, the Court finds an across-the-board reduction of 60% reasonable under the circumstances and fairly reflective of the time and effort that should have gone into the case from its inception and through until its conclusion. Reducing the 23.08 hours sought by 60% results in an adjusted hour amount of 8.8 hours. Multiplying 8.8 hours by the $300 hourly rate awarded earlier, results in a lodestar figure of $2,640. This is the sum the undersigned recommends Plaintiff be awarded in attorney's fees.

## B. COSTS

Defendant seeks an award of $480 in costs and litigation expenses. The FDCPA grants prevailing plaintiffs "the costs of the action," 15 U.S.C. § 1692k(a)(3). The specific costs and expenses sought here consist of the filing fee, the service of process fee and an expert witness fee. Defendant objects only to the $100 expert witness fee, claiming same is not a recoverable cost under 28 U.S.C. § 1920. Plaintiff has elected not to file a reply memorandum, leading the undersigned to conclude she concedes the point. Accordingly, the Court deducts $100 from the sum proposed, and recommends that Plaintiff be awarded costs in the total amount of $380. In accordance with the above and foregoing, it is hereby

**RECOMMENDED** that Plaintiff's Verified Motion for Award of Costs and Attorney's Fees (D.E. # 37) be **GRANTED IN PART AND DENIED IN PART** in accordance with the terms hereof. Should the District Court elect to adopt the under-

signed's recommendation, Plaintiff should be awarded $2,640 in attorney's fees and $380 in costs, for a combined total attorney's fee and cost award of $3,020.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Kenneth A. Marra, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.1988), *cert. denied* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993).

**RESPECTFULLY SUBMITTED,** on this 21st day of August, 2009, in Chambers at West Palm Beach, Florida.